## FRANCIS, ADOPTION OF, IN RE:

Probate Court, Franklin County.

No. 118,435.   Decided March 28th, 1947.

James M. Hengst, Columbus, for Albert G. Montie.

Horace W. Troop, and Paul Horst, Columbus, for petitioners.

## DECISION ON APPLICATION FOR ADOPTION

### OPINION

By McCLELLAND, J.

This matter comes before this Court upon the application filed herein on January 28, 1946, for the adoption of the child of Albert and Jean Montie, herein designated as Thomas Owen Francis, the Answer of Albert G. Montie, filed on September 28, 1946, and the evidence adduced by the parties. The petition filed herein recites as

"Said father has failed to support said child for more than two years past."

The consent of the father has not been given, and it therefore becomes incumbent upon the petitioners to present sufficient proof to sustain the allegation hereinbefore referred to, together with other allegations contained in the petition, before the Court can grant the prayer of the petition.

Three open hearings have been had in this Court with reference to the above matter, and, at the last hearing, counsel for Mr. Montie, the father, moved that the petition be dismissed for five different reasons set forth therein:

First, that the consent of the father is necessary, but has not been given.

Second, that the father is not bound to comply with the order of the Nevada Court as to support and maintenance, because the order of the Nevada Court was null and void.

Third, that the father is entitled to the custody of the child whether or not he has failed and neglected to support it.

Fourth, that the consent of the mother to the adoption was without force and effect.

Fifth, that the best interests of the child will be subserved by being reared by his natural father who wants his possession and custody.

The motion above made is tantamount to submitting the whole matter on the record. The Court will therefore consider the entire record in ruling upon said motion.

This is a most unusual situation and in order that the Court may intelligently discuss the matter, it will discuss the various facts in their chronological order, together with the effect of same.

The testimony discloses that Albert and Jean Montie were husband and wife. That they were the parents of the child who is the subject of this adoption proceeding. In 1943, and some time before that date, the parents were living in Olean, New York. Difficulties arose between husband and wife which resulted in their temporary separation, after which they were united and lived together as husband and wife. Difficulties again arose between them, which resulted in physical abuse of the mother, inflicted by the father. It is significant that the record contains no evidence that the father ever abused the child. The mother communicated to her brothers, one in Toledo, and another in Cleveland, Ohio, of said abuse. The brothers then went to Olean, New York, and assisted the mother in leaving the state and taking with her the above named child. This was done without the consent and against the will of the father. The child was taken to either Cleveland or Toledo, Ohio, and was placed in the home of the petitioners, who later moved to Westerville, Ohio, and then later moved to Upper Arlington, Ohio.

Sometime during the summer of 1943, Jean Montie, the mother, went to Reno, Nevada, remained there long enough

to satisfy the laws as to residence, and procured a decree of divorce on the 24th day of September, 1943. By the terms of that decree she was given an absolute divorce from the defendant, Albert G. Montie, on the ground of extreme cruelty, and she also got an order for the custody and control of the minor child Thomas Owen Montie. She also procured an order against the defendant to pay to her $35.00 per month for the support and maintenance of said minor child. The defendant, Albert Montie was served with summons in that action, as provided by the laws of Nevada. Very soon after the decree of divorce was granted, Jean Montie, the mother, returned to Ohio, and on October 1, 1943, deposited a letter in the post office at Westerville, Ohio, addressed to her husband in Olean, New York, as shown by Exhibit "E".

The testimony also discloses that the mother did not take the child with her to Nevada, but permitted it to remain with the petitioners in the State of Ohio.

Now with reference to the removal of the child from the state of New York. As we have hereinbefore noted the child was removed by the mother with the assistance of her brothers, due to alleged abuse on the part of the husband. This abuse is not denied by the father, but he has admitted that he did inflict some bodily abuse upon his wife. Instead of resorting to the assistance and relief of the courts, the brothers, one of whom is the petitioner herein, took the law into their own hands and removed the child from the state of its father's domicile without his consent and against his will. Under those circumstances it is the opinion of the Court that said child is legally domiciled in the State of New York.

We now come to the validity of the decree of the Nevada Court. In our opinion the decision of the Supreme Court of the United States, in the case of Williams v North Carolina, reported in 325 U. S. Reports, page 226, is decisive of this case as far as it goes, with reference to its binding effect upon the courts of Ohio. It is held in that case that domicile must exist in order to give a court power to exercise judicial authority, and if domicile does not exist the full faith and credit clause of the Constitution of the United States cannot be invoked to support a decree by another state. The court further finds that a decree of divorce rendered in one state may be collaterally impeached in another state by proof that the Court which rendered the decree had no jurisdiction, even though the record of the proceedings in that court purports to show jurisdiction. Now applying the principles therein set forth to the case at bar, we find that Jean Montie went to the State of

Nevada for the sole purpose of establishing a temporary residence, or domicile, for the purpose of procuring a divorce. The record is silent as to whether or not she had any employment while she was there. The record positively shows that she did not take the child with her into the State of Nevada, and that she left the State of Nevada within a very few days after the decree was granted, as is indicated by her letter mailed at Westerville, Ohio, in the early part of October, 1943.

We therefore are forced to come to the conclusion that her residence was only a temporary residence, and such residence as was established was done only for the purpose of procuring a divorce, and that under the Williams Case above referred to, the decree is null and void. Even though we should admit that the decree of divorce was a valid decree as far as the divorce is concerned, it certainly was not a valid decree as far as the custody of the child was concerned. The child was not within the jurisdiction of the court, and, in addition thereto, it had been removed from the domicile of its father without his consent, and against his will.

We are also of the opinion that the portion of the decree ordering the father to pay $35.00 per month for the support of the child was also null and void.

Some time after the Westerville letter was mailed, Jean Montie went to Houston, Texas, where on October 30, 1943, she addressed a letter to her husband as shown by Exhibit "F". She then left Texas and went to Oak Ridge, Tenn., where she procured employment. About that time the child again went into the home occupied by its mother Jean, and apparently remained with its mother until after the petition for adoption was filed in this Court. The petition was filed on January 28, 1946. When this Court received the information that the child was not in the home of the petitioners when the petition was filed, it suggested that a Supplemental Petition be filed, which was done on January 13, 1947. On February 25, 1947, an Answer of Albert G. Montie to the Supplemental Petition was filed. Although Mr. Montie appeared in this Court prior to that date for the purpose only of questioning jurisdiction of the Court, he did file his Answer on February 25, 1947, and participated in the hearing. It is the opinion of this Court that by the filing of said Answer, and participating in the hearing, he entered his appearance for all proper purposes in this proceeding.

The record discloses that on March 20, 1946, Jean Montie, the mother, filed her written consent in this Court to the adoption of said child as prayed for.

The petition in this matter contained a recital that the father of the child was Albert Montie, and that his address was unknown. An affidavit for constructive service was filed and publication made as required by law. When the matter originally came on for hearing the Court heard the testimony by the petitioners, and upon said testimony entered an Interlocutory Decree on March 20, 1946. Then on September 21, 1946, at the expiration of the six months required by law, a final decree was entered, and then upon complaint of counsel for Albert Montie, the Court of its own motion set aside the final decree and permitted Albert Montie to file his Answer as hereinbefore stated. At the hearing of this matter, and in which hearing Albert Montie participated, it developed that Albert Montie, at the time the petition was filed, was living in Olean, New York; that the petitioners had been in correspondence with his sister in Buffalo, New York, and could have readily procured his address from her. The Court is of the opinion from those facts, together with the circumstances under which the child was taken from the State of New York, the petitioners did not use ordinary diligence in order to ascertain his address, and that the service of summons upon Mr. Montie by publication is not a good and valid service.

We now make some reflections upon the effect of the consent of the mother to the adoption. It is to be noted that the consent was given prior to the Interlocutory Decree. **Sec. 10512-14 GC**, subdivision four, provides that such consents may not be withdrawn after an entry of interlocutory order or after the final decree of adoption. This consent on the part of the mother was binding upon her. Even though the foregoing statement is true, that consent was not binding upon the father. Subsequent thereto, the mother died, and, according to the general law pertaining to the custody of a child, the custody again fell back into the hands of the father, even though for argument sake we might admit he did not have the legal custody prior to that time.

We now come to the essential elements in this case, and that is whether or not the father wilfully failed to support the child for more than two years immediately preceding the filing of the petition. It is to be noted that the petition omits the word "wilfully", but the Court will proceed as if said word does actually appear in the petition.

The court has referred to the letter mailed on October 1, 1943, by Jean Montie to her husband in Olean, New York. As a part of that exhibit there appears a letter from Albert to

Jean, dated October 6, 1943, in which he uses the following language:

"* * * I will send this amount every month as long as I can. Don't bother to threaten me regarding this or any other action I may take. If it does not meet with your complete satisfaction it is up to you to take any action or see or write to any person whom you wish. I wish to support Tommy, but it does not meet with my complete approval to do so where he is. I would appreciate a recent picture of Tommy."

We also refer to the letter written by Jean and mailed from Houston, Texas, being Exhibit "F", and, attached to it is a copy of a telegram sent by Mr. Montie to Jean as follows:

"I most certainly want Tommy. Let me know by telegram collect if he is well and what your plans are for getting him here. Signed Al."

At the hearing Mr. Montie was asked why he did not send more money to his wife for the support of Tommy. He replied that he was acting upon the advice of his counsel, and that he felt if he did send her money it would enable her to keep the child out of the State of New York.

We have alluded to the term "wilfull" as used in the statute. Funk & Wagnalls defines "Wilfull" as "willing", "disposed or ready", also "wishful", "self-determined", "voluntary", "intentional", "governed by will without yielding to reason", "obstinate", "perverse", "stubborn". Did Mr. Montie wilfully fail to support his child for two years immediately preceding the filing of the Petition? In order to answer this question we must consider all the circumstances, and that is why the Court has gone at length to review the circumstances surrounding this entire transaction. When we consider the circumstances under which the child was taken from New York without the consent of the father, and against his will, and without resorting to the relief which the New York Courts were open to give, the fact that the mother went to Nevada and established only a temporary residence there and procured a divorce without invoking the aid of the courts of New York, the invalid order of the Nevada Court with reference to the support of the child, the apparent willingness of the father to support the child if he were sent back to New York, and the advice of his counsel not to send any money for his support, we are unable to arrive at the conclusion that he wilfully failed to support his child for more than two years immediately preceding the filing of the petition.

·It may be that Albert Montie is a poor father, that he is an unfit man to rear his progeny, but this Court will not put its stamp of approval upon an adoption growing out of the circumstances as shown by the record in this case. There being no valid consent on the part of the father, there not being sufficient proof that the father wilfully failed to support the child for more than two years immediately preceding the filing of the petition, the prayer of the petition is denied, and an order may be drawn accordingly.