NASALROAD et ux. v. GAYHART et al.

No. 35536.   May 12, 1953.

*257 P. 2d 299.*

A. R. Swank, A. R. Swank, Jr., and Chilton Swank, Stillwater, for plaintiffs in error.

Schwoerke & Schwoerke, Oklahoma City, and Guy L. Horton, Stillwater, for defendants in error.

DAVISON, J.  This is a proceeding in habeas corpus brought by Ervin L. Nasalroad and Rebecca Nasalroad against Carnie C. Gayhart and Opal V. Gayhart to obtain the custody of a minor male child of the age of seven years.

Petitioner Rebecca Nasalroad is the mother of the child and Ervin Nasalroad is her husband. Respondent Opal Gayhart is a half-sister of Ervin Nasalroad.

The trial court denied the writ and rendered judgment in favor of respondents.

Petitioners appeal and assert that the judgment is not sustained by the evidence and is contrary to law.

The evidence shows that petitioners were married December 20, 1940. Ervin Nasalroad was at that time in the United States Army and was stationed at Ft. Sam Houston, Texas. He was sent overseas in June of 1942. Mrs. Nasalroad lived at Stillwater, Oklahoma, during his absence. He returned home in April, 1945. Upon his return he discovered that his wife was pregnant. She gave birth to the child, the subject of this controversy, on July 16, 1945. About a week after its birth custody was given to the respondents herein who have had its custody ever since.

There is a conflict in the evidence as to the circumstances under which custody of the child was obtained by respondents. The weight of the evidence, however, shows that Mrs. Nasalroad solicited and frequently requested respondents to take custody of and rear the child; that after some hesitation they agreed to do so. Several letters written by petitioners to respondents strongly tend to support the above state of facts.

The child was born in a hospital at Cushing, Oklahoma. Mrs. Nasalroad left the hospital July 23, 1945, and went to Tulsa. On the day she left the

hospital she and her husband signed a written agreement whereby they agreed that custody of the child should be given to respondents and the child should be adopted by them. Petitioners both testify that they did not read the document and did not know its contents at the time they signed it; that it was represented to them that the document was an application to obtain a ration book for the child. They, however, both testified that it was the understanding and agreement that respondents were to have temporary custody of the child for a period of about six weeks and that it would then be determined as to whether they should adopt the child. After the agreement was signed, respondents took custody of the child and named it Dwayne Gayhart. This agreement was signed July 23, 1945. On the 27th day of December, 1945, Mrs. Nasalroad wrote a letter to the respondents, in which among other things she said:

"* * * I do think a lot of you for you're the mother & father of Dwayne & I do know that you all think the world of Dwayne. He is a wonderful baby and I do love him so very much. We will all be happy beings you told me what you would do. It is so hard to write on paper. I just want both of you not to worry.

"Please come whenever you can. Don't be afraid I do want you & Carnie to have Dwayne. * * *"

We think this letter shows quite conclusively that petitioners knew when they signed the agreement that it was an adoption agreement and they were willing at that time for respondent to have custody of and adopt the child. However, thereafter, for reasons shown by the record not necessary here to discuss, they changed their minds, and on March 25, 1953, brought this action to obtain custody of the child.

The record discloses that the unfortunate circumstances above disclosed did not cause a separation between Mr. and Mrs. Nasalroad, but that they continued to live together as man and wife and that thereafter two children were born to them, one of which was six years of age at the time of the trial and the other four years of age. Mr. Nasalroad testified that he is willing to take the child in his home and care for it and treat it the same as if it were his own. We do not doubt that he would make a conscientious effort to do so but we doubt the possibility of his doing so. The presence of this child would undoubtedly constitute a constant reminder to him of the unfortunate circumstance which occurred in his married life and it is very probable that he would not have the same love and affection for the child as he would have for the two children of which he is the father. This is a circumstance which the trial court had a right to take into consideration in arriving at its conclusion.

It is contended by petitioners that Mrs. Nasalroad, being the mother of the child, has a prior right to its custody and that she may not be deprived of that right in the absence of a showing that she is not a fit and proper person to have its custody, or that the best interests of the child require that its custody be placed elsewhere. This is a correct statement of law. We have many times so held. Potter v. Potter, 203 Okla. 236, 219 P. 2d 1011; Ex parte Wallace, 206 Okla. 66, 241 P. 2d 192; Ex parte Harley, 207 Okla. 71, 247 P. 2d 508. The trial court, however, found that the best interests of the child required that it remain with respondents.

It is further contended by petitioners, assuming that the adoption agreement was freely and voluntarily entered into between the parties, it is nevertheless of no force and effect for the reason that children are not chattels and not subject to barter or sale. This is undoubtedly true but the fact that a parent has relinquished the custody of his child should be given due consideration in determining whether it should be returned to the parent. Hamann v. Miesner, 148 Okla. 50, 297 P. 252; Osburn v. Roberts, 197 Okla. 206, 169 P. 2d 293; Potter v. Potter, supra.

The evidence shows that respondents are fit and proper persons to have the care and custody of the child; that they are deeply devoted to the child and have no children of their own and that the child is being well treated and cared for by them. .

The trial court after considering all the facts and circumstances in evidence found that the best interests of the child require that its custody remain in respondents and entered judgment accordingly.

We cannot say that the judgment rendered is clearly against the weight of the evidence. It will, therefore, not be disturbed on appeal. Ex parte Thomas, 205 Okla. 451, 238 P. 2d 806; Morrison v. Morrison, 197 Okla. 620, 173 P. 2d 919.

Judgment affirmed.

HALLEY, C. J., JOHNSON, V.C.J., and CORN, ARNOLD, O'NEAL, and WILLIAMS, JJ., concur. WELCH and BLACKBIRD, JJ., dissent.