Zella HOOD, Plaintiff in Error,

v.

Gerald ADAMS, Defendant in Error.

No. 41123.

Supreme Court of Oklahoma.

Oct. 6, 1964.

As Corrected Nov. 4, 1964.

Rehearing Denied Nov. 4, 1964.

Erwin & Erwin, Chandler, for plaintiff in error.

Richard James, Stroud, for defendant in error.

WILLIAMS, Justice.

The question to be decided in this appeal is whether the maternal grandmother or the father of a nine year old girl should be appointed guardian and have custody of such child following the death of her divorced mother who previously had had custody of the child.

Zella Hood, maternal grandmother, by petition filed in the county court, initiated this action for the appointment of herself as guardian of Lisa Lynn Adams. Gerald Adams, father of the child, filed a protest against the appointment of Mrs. Hood and asked that he be appointed guardian of the person of his daughter. After a hearing, the county court appointed Mr. Adams as guardian of the person and estate of such child. Upon appeal to the district court and trial de novo, that court entered its judgment affirming that of the county court making such appointment. From such judgment and the overruling of her motion for a new trial, the grandmother appeals.

The record reveals that the child's mother, Mrs. Carol Ann McDaniel, died in March, 1964; that the child's father and mother had married in 1953 and were divorced in 1956; that the divorce was obtained upon grounds of incompatibility and the custody of the child was awarded to her mother; that at the time the divorce was granted the mother was employed as a secretary and the father was attending college and working part-time; that in 1958 the mother of the child married Harvey McDaniel and they lived together until her death; that during such time the child was under their custody and control; that from the time the divorce was obtained until the remarriage of the mother, the father paid the mother $40.00 per month for the support of the child, and visited his daughter occasionally; that the relationship between the child and the stepfather was good; that the child spent a considerable amount of time with her maternal grandmother, Mrs. Hood, the plaintiff in error, and that since the remarriage of the mother the father has lived outside this State; that in 1960 he remarried; that he and his wife have no children; that they own their three bedroom home; that the father has his master's degree in education and his wife has a B. S. degree and lacks "three hours in completing" her master's; that he teaches in the high school of McCracken County, Kentucky, and she teaches in the grade school which Lisa Lynn would attend if she lived with them. Mr. Vannerson, president of the civic club of which the father is a member and a deacon in the church which the father and his wife regularly attend, testified that the father had a very good reputation in their community in Kentucky.

The trial court made no finding that the father was an unfit person to have custody of his daughter. The only uncontradicted evidence adverse to the father was that after the remarriage of the mother and until her death, he did not contribute to the support of the child nor did he see his daughter.

Also, there was evidence that in 1956, a few months prior to their divorce, the father, mother and child were visiting in the home of the Hoods; that the father stated that he was going to take the child to visit his parents that week-end; that Mrs. Hood said "That's just fine. That's all right, but let's have her to stay one place or the other; not just half the time here and half over there, because the child needs to know where she is going to stay and who she is staying with"; that after Mrs. Hood made this statement, the father "threw a tantrum. And he cried and he stomped and he hollered * * *"; that he took the little girl and went to his parents' place but soon returned for the reason that his parents were not at home; that he told his wife to get her things and "let's go home"; that the father

threatened to go to California and take the child and not let the maternal grandparents see her again.

The husband testified that at the time Mrs. Hood made the statement first above quoted that he might have cried for the reason that he thought they were depriving his mother of the opportunity to see her grandchild. He testified he did not recall threatening to go to California.

■ For reversal, plaintiff in error advances two propositions. The first is that "It is for the best interest of this minor that the maternal grandmother be appointed as her guardian." Under such proposition it is contended that "The father is a total stranger to the child. She has been reared to her present age and carefully nurtured by her mother, step-father, and by her maternal grandparents. She knows and loves her step-father and maternal grandparents and wants to stay with them. There is no question about the fitness of the plaintiff [Mrs. Hood]".

Title 10, Section 5, O.S.1961, provides:

"The father of a legitimate unmarried minor child is entitled to its custody, services and earnings; * * *."

Title 30, Sections 11 and 12, O.S.1961, respectively provide:

"In awarding the custody of a minor, or in appointing a general guardian, the court or judge is to be guided by the following considerations:

"1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; * * *."

"Of two persons equally entitled to the custody in other respects, preference is to be given as follows:

"1. To a parent.

* * * * * *

"4. To a relative."

In 27B C.J.S. Divorce § 314, pp. 490, 491, is the following language:

"* * * (I)t is generally the rule that on the death of a parent the power

of the court over custody of the child derived from the divorce action, together with the effectiveness of the decree, terminates. In such case, the surviving parent ordinarily succeeds to the right of custody. The surviving parent has first and paramount right to the child's custody and he should not be divested thereof unless the best interests of the child so demand. * * *

* * * * * *

"In a proceeding between the surviving parent and a third person, the parent, if fit, is properly awarded custody, * * *."

In McVey v. Chester, Okl., 288 P.2d 740, 742, we said:

"Ordinarily, when one parent, having minor children's custody dies, the other parent becomes entitled to such custody unless it clearly appears that the surviving parent is unfit to have the children's custody, in which case, their welfare forbids award of custody to such parent. But in awarding custody and appointing guardians of children, children's welfare is paramount to their parent's claims, 30 O.S.1951 § 11, In re Guardianship of Hight; supra [194 Okl. 214, 148 P.2d 475], and cases cited therein. See also Roberts v. Biggs, Okl., 272 P.2d 438, and cited cases.

"Another rule very pertinent in the instant case is that a parent's fitness to have the custody of a child must be determined as of the time of hearing of the petition. In Guardianship of Willis, 123 Cal.App.2d 446, 266 P.2d 944. This rule was applied by the trial judge in Roberts v. Biggs, supra, and approved by this Court on appeal."

In Marcum v. Marcum, Okl., 265 P.2d 723, 727, 728, we said:

"In the case of Scroggin v. Griffin, 185 Okl. 456, 94 P.2d 244, 245, it was held:

"'In order to justify a court in depriving a parent of the care and custody of his child, the evidence offered

to establish the unfitness of the parent must be clear and conclusive, and sufficient to show the necessity for so doing to be imperative.'

"In the same case this court held:

" 'The unfitness which will deprive a parent of the right to the custody of his minor child must be positive and not comparative; and the mere fact that the child might be better cared for by a third person is not sufficient to deprive the parent of his right to its custody.'

"In this case it was held:

" 'The right of the father to the custody of his child is superior to that of grandparents, unless it is shown conclusively that the father is unfit as to character and habits and is incapable of providing for the child's support, and for its intellectual and moral development. This court in many decisions has laid down rules defining the powers of the courts in cases involving the custody of children. In the case of Brooks v. Preston, 134 Okl. 272, 273 P. 345, 346, where the contest was between the father and the grandparents of the child, the court said: "In a contest between the father and the grandparents, in order to deprive the father of the custody of his child, it must be shown that his condition in life, or his character and habits, are such that provision for the child's ordinary comfort and contentment or for its intellectual and moral development cannot be reasonably expected at the parent's hands." ' "

■ We consider the following language from Roberts v. Biggs, Okl., 272 P.2d 438, 442, most applicable to the instant case:

" * * * As we have seen, the propriety of entrusting parents with the custody of their own children is upheld by the presumption in their favor that can only be overcome by clear and convincing evidence. If we were to reverse the judgment of the trial court, who had the opportunity of hearing the witnesses and observing their candor and demeanor and other things indicative of their truthfulness or lack of it, we would have to hold that said judgment is clearly against the weight of the evidence. See Osburn v. Roberts, 197 Okl. 206, 169 P.2d 293. On the basis of the evidence tending to support it, we cannot so hold. * * *"

■ After reading the transcripts of testimony submitted by the respective parties, we are convinced that the judgment of the trial court is not clearly against the weight of the evidence.

The second and last proposition of Mrs. Hood, plaintiff in error, is that "This Court will lose jurisdiction of the child if the defendant [father] is appointed guardian and permitted to remove her from the State of Oklahoma". We have already affirmed that portion of the order appointing the father guardian of the minor and the only issue to be resolved is whether the trial court erred in permitting the father to take the child to his home outside the State of Oklahoma.

In the order appointing the father the guardian of the person and estate of Lisa Lynn Adams, the trial court found and ordered that the father should be authorized to move the residence of the minor from the State of Oklahoma upon his executing a good and sufficient bond in the amount of $5,000.00, conditioned upon his return of the minor child to abide any further order of the court, or any other court of the State of Oklahoma. Pursuant to said order, a bond was executed.

Title 30 O.S.1961 § 15, provides:

"A guardian of the person is charged with the custody of the ward, and must look to his support, health and education. He may fix the residence of the ward at any place within the State, but not elsewhere, without the permission of the court."

■ The above statute certainly implies that the trial court had the power to permit the father to take the child out of the state.

In Klutts v. Blackbird, 198 Okl. 26, 174 P.2d 361, in the second paragraph of the syllabus this Court held:

"The district courts of Oklahoma, in the exercise of the discretionary powers vested in them through their continuing jurisdiction to provide for the care and custody of minor children in divorce actions, may authorize one of the parents to take a minor child beyond the limits of the State of Oklahoma, subject to the promise to return the child when required by the court and conditioned by the giving of a bond to insure compliance with the future orders of the court with respect to said child."

We can find no statutory prohibition or justifiable cause for reversing the judgment of the trial court.

Affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.