John H. DeGOLYER, Appellant,

v.

James Lee CHESNEY and Mary Lou Chesney, Appellees.

John H. DeGOLYER and Sandra DeGolyer, Appellants,

v.

James Lee CHESNEY, Appellee.

Nos. 44406, 46561.

Supreme Court of Oklahoma.

Oct. 8, 1974.

Rucker, Tabor, McBride & Hopkins, Donald G. Hopkins, Dale Warner, and Jeff King, Tulsa, for appellants.

Shepherd, Maner & Brunton, Robert L. Shepherd, Tulsa, for appellee.

BARNES, Justice:

The central figure in these consolidated appeals is Denise Ann DeGolyer [now Chesney], whose care, custody, visitation, and adoption has had attention from courts in two States on various occasions over a period of more than four years.

Denise, born May 31, 1964, was adopted in Rochester, New York by John H. De-Golyer and his then wife, Mary Lou, in 1965.

Later, when this couple separated in 1967, they agreed in writing that Mary Lou was to have Denise's custody, with visitation rights in DeGolyer, who was to contribute $200.00 per month for the child's support. When the DeGolyers shortly thereafter obtained a Mexican divorce, their separation agreement was approved and made a part of the divorce decree.

Mary Lou thereafter married the Appellee, James Lee Chesney, an employee of Allied Chemical Company in Pittsford, New York. In January, 1968, Chesney was transferred to Tulsa and the couple moved there, bringing Denise with them.

In April, 1968, DeGolyer married his present wife, Sandra, who has two sons by a former husband. This family still resides in Pittsford.

In April, 1970, the Chesneys instituted proceedings for Denise's adoption in their new home city of Tulsa. In conjunction with their adoption petition, the Chesneys also filed an application for an order allowing Denise's adoption without DeGolyer's consent, which consent they alleged was unnecessary because he had wilfully refused and neglected to contribute to this minor's support for a period of more than one year next preceding the filing of their petition. At the hearing on this application [which will hereinafter be more fully described]

both the Chesneys and DeGolyer appeared and introduced evidence; but the Chesneys prevailed; and, on April 29, 1970, the court entered its order finding that they had sustained their application's allegations and that they could proceed on their adoption petition without DeGolyer's consent.

Later that year, DeGolyer lodged an appeal from that order docketed in this Court opposite No. 44,406. The Chesneys filed a motion to dismiss it on the ground that the order involved was not a final or appealable order. Before this Court had determined any question in this appeal, De-Golyer and his present wife, Sandra, filed, in a separate proceeding in the District Court at Tulsa, their petition for Denise's adoption.

Thereafter, and before Appeal No. 44,406 had been adjudicated on its merits, counsel jointly apprised this Court that Mary Lou Chesney had died on February 23, 1972. In a supplemental brief thereafter filed, DeGolyer took the position that, by reason of his then being Denise's only surviving legal parent, his rights were superior to those of any non-parent, such as Chesney, and that Mary Lou's death had rendered her consent to Denise's adoption by Chesney a nullity and caused the matter of such adoption to become moot.

In the meantime, the District Court, upon being apprised of Mrs. Chesney's death, and after a hearing on the matter a few days later, made Denise a ward of the court and thereupon ordered her care and custody to remain temporarily in Mr. Chesney, who, by that time, had been transferred by Allied Chemical from Tulsa to Houston, Texas.

After considering the parties' oral and written arguments on the new issue based upon Mrs. Chesney's death, this Court, by order of February 5, 1973, temporarily remanded DeGolyer's appeal [No. 44,406, supra] to the District Court for an original determination by that court as to the effect of Mary Lou Chesney's death upon the adoption proceedings that she and James Lee Chesney had filed, and that were

still pending, in that court. Thereafter, at the hearing the District Court held [pursuant to this Court's order] on April 12, 1973, the proceedings of the DeGolyers to adopt Denise were consolidated with the Chesney proceedings to adopt her, and the court entered judgment [denominated "FINAL DECREE OF ADOPTION"], in which it sustained the Chesney petition for Denise's adoption, changed her name to "Chesney", and ordered that DeGolyer be [permanently] deprived of any and all rights to her care, custody, and control, after finding, in effect, that the Chesney adoption proceedings had not been affected [in any legal way] by Mrs. Chesney's death. In said judgment the court specifically rejected the DeGolyers' claim that before the entry of any final adoption decree, the investigation referred to in 10 O.S.1971, § 60.13, should be held. On the same date, said court entered a separate order in the DeGolyer adoption proceedings denying the petition for adoption theretofore filed therein.

Complaining of these last and most comprehensive of the trial court's determinations, the DeGolyers lodged an appeal docketed in this Court opposite No. 46,561. To facilitate its adjudication, with its companion No. 44,406, supra, these two appeals were consolidated under No. 46,561.

■ As we have chosen to deal with the issues raised in this "two in one" appeal in the sequence in which they were first raised in the trial court, we revert to that court's hearing of April 29, 1970, for the evidence as to whether or not Denise was eligible for adoption by the Chesneys without DeGolyer's consent, as authorized by 10 O.S.1971 and 1969 Supp., § 60.7, and prayed for in the aforesaid application of Chesney and his late wife. We preface this by first overruling Chesney's motion to dismiss Appeal No. 44,406, supra, as in this litigation's present posture before this Court the question of whether the order entered at the close of that hearing was an appealable order is now moot.

At that hearing, Mrs. Chesney testified that DeGolyer's last payment of child sup-

port was by a check he handed her while she and the minor were visiting in Rochester, New York, in February, 1969. She further testified that the proceeds of this check satisfied DeGolyer's child support obligation through the month of March of that year. Mrs. Chesney specifically denied that DeGolyer had paid, or tendered, any child support since that time.

On cross-examination, DeGolyer's counsel showed Mrs. Chesney a duplicator machine copy of a check [later admitted in evidence "for what it was worth", over the Chesneys' objections, as "Respondent's Exhibit No. 1"] dated September 19, 1969, made to Mrs. Chesney's order in the amount of $2,400.00, written by DeGolyer on his Rochester bank. Then counsel asked the witness if she had seen such a check. She answered in the negative. Mrs. Chesney further testified that in July, 1969, when DeGolyer was several months delinquent in child support payments, he promised to pay up his then arrearage on condition the minor would spend two weeks with him, which the minor did. Mrs. Chesney further testified that DeGolyer never kept his promise to pay up, and she had no more contact with him.

Mr. Chesney testified that, to the best of his knowledge, no payment from DeGolyer had been received at the Chesney address since the one of February, 1969.

DeGolyer testified that he sent the September, 1969, check [depicted by his aforementioned Exhibit No. 1] to the Chesneys' Tulsa residence address, but that, since that time, it had not cleared his checking account, nor had he heard anything from Mrs. Chesney concerning "child support or back child support."

DeGolyer admitted that he had made no attempt to tender any child support since September, 1969, but he added that this was because this $2,400.00 check was to pay his support obligation through March, 1970. He also admitted that he had been financially able to make all of the payments due under the divorce decree, and was then able to pay all arrearages, if allowed to do so. [He gave no explanation

for having become delinquent in his payments for the months of April to September, 1969.] DeGolyer also admitted that it was the practice of his bank to send him monthly statements with his cancelled checks enclosed; and he further testified that he personally examined his September bank statement, "probably" by the latter part of October of that year. DeGolyer also admitted that Mrs. Chesney had endorsed, and deposited for payment, all of the child support payments he had ever delivered to her previously. He also admitted that, although he had known [at all times material to the controversy] how to contact Mrs. Chesney, he had never attempted to ascertain why the check he claimed he had mailed her in September, 1969, had never cleared his bank.

After considering briefs submitted by the parties, the court entered its aforementioned order granting the Chesneys' application to proceed with their adoption without DeGolyer's consent. In his oral remarks from the bench in announcing his decision, the Trial Judge, in speaking of the September, 1969, check DeGolyer claimed to have mailed to Mrs. Chesney, stated in part:

> "The Court further finds that there is no corroboration of any kind that . . . [DeGolyer] . . . did execute or did mail said check. . . .
>
> \* \* \* \* \* \*
>
> "The evidence . . . shows that if said check was mailed . . . [DeGolyer] . . . discovered that it had not been cashed when he checked his monthly statement after the alleged mailing nor for several months thereafter when he checked it; that he made no inquiry, made no effort to determine whether said check had been received or not.
>
> "And the Court, again applying the rule of a preponderance of the evidence and the rule as to intention, carelessness and negligence, and in view of the fact that . . . [DeGolyer] . . . has not taken any action to appear be-

fore the divorce court and endeavor to have that court accept a payment and to determine that he had endeavored to make the payments as required by that court, therefore, the Court can reach no other conclusion but that the failure to make the payments by . . . [DeGolyer] . . . for the twelve months next preceding the filing of the petition for adoption [was] willful.

> "Therefore, the Court concludes that under the Uniform Adoption Act of the State of Oklahoma, the consent of . . . [DeGolyer] . . . is not necessary."

The substance of DeGolyer's argument under his first proposition is that if the trial court had given "ample weight and consideration" to his Exhibit No. 1, it could not have found that he wilfully failed or refused to support Denise for the period of one year next preceding the filing of the Chesneys' adoption petition. DeGolyer recognizes the rule that wilfulness or neglect may be determined from circumstances and that such determination is within the trial court's prerogative as trier of the facts. But he says that "if the trial court would have accepted" his Exhibit No. 1 as proof of the payment it was introduced to establish, then there would have been no finding of a deliberate or intentional failure, on his part, to support the minor.

What DeGolyer says may be true; but the Trial Judge's remarks in announcing his decision clearly show that he considered DeGolyer's said Exhibit, weighed the other evidence against his testimony that it depicted a check he had mailed to Mrs. Chesney, and found that said testimony lacked sufficient weight and credibility. As said in McClung v. Knapp, Okl., 353 P.2d 831, 835:

> "In some cases, the circumstances or the parties' actions, speak more emphatically, clearly and conclusively than their words or testimony (See Thompson v. Giddings, Okl., 276 P.2d 229, 237) and, after carefully examining the record, we

are convinced that this is one of those cases."

This Court has often held, in cases where the correctness of trial courts' judgments hinged upon the weight of the evidence, that this Court will not disturb such judgments unless, after an examination of the records therein, they appear to be clearly against that weight. Nasalroad v. Gayhart, 208 Okl. 447, 257 P.2d 299. Under that rule, the trial court's determination in this case that DeGolyer wilfully failed or refused to contribute to Denise's support for twelve months next preceding the filing of the Chesneys' petition cannot be disturbed.

DeGolyer's argument under his PROPOSITION II that the trial court erred in determining that the Chesneys might proceed on their petition for the adoption [after it had been determined that his consent to it was unnecessary] is essentially based upon his view that the court's determination as to his wilful failure or refusal to support the minor was error. Since we have already concluded that this determination was not reversible error, and the rest of DeGolyer's argument under this Proposition does not appear to be pertinent, nor supported by applicable authority, we think it unnecessary to discuss it in detail. Suffice it to say that we find it lacks sufficient merit.

Under "PROPOSITION II" of the latest brief filed jointly by DeGolyer and his present wife, Sandra [hereinafter otherwise referred to as "Appellants"], these Appellants argue that Mary Lou Chesney's death, prior to entry of the adoption decree herein appealed from, had the effect, under the law, of entitling Denise's only surviving legal parent, Mr. DeGolyer, to this child's custody, and also rendered moot the then still pending petition that Chesney and his then living wife, the late Mary Lou, had previously filed pre-mortem. In his oral remarks from the bunch at the time he adjudicated this controversy, the trial court specifically found [among other things]:

"That the death of Mary Lou Chesney has no legal effect upon the petition of Mr. Chesney; . . . ." [and inferentially upon that part of the proceedings that preceded this death].

It is Appellants' position that this finding is incorrect as a matter of law. Although they cite no cases directly in point supporting this position, Appellants rely principally upon what this Court has said concerning the parental rights of custody in guardianship cases and others not involving adoption, such as Hood v. Adams, Okl., 396 P.2d 483, McVey v. Chester, Okl., 288 P.2d 740, Marcum v. Marcum, Okl., 265 P.2d 723, and Guardianship of Hight, 194 Okl. 214, 148 P.2d 475. All of these cases recognize the Common Law and Oklahoma statutory principle that: *Ordinarily,* when one parent, having a minor child's custody, dies, the other parent becomes entitled to his or her custody, *unless* it clearly appears that the surviving parent is unfit for the child's custody, and the child's welfare forbids awarding his or her custody to that parent. In the present case, there was no evidence at the hearing wherein Chesney was allowed to adopt Denise that DeGolyer was unfit for her custody, but Chesney [hereinafter referred to as "Appellee"] suggests that guardianship cases are not applicable, saying: "The law regarding guardianship cases does not necessarily comport with adoption law . . . ." This qualified statement is undoubtedly true, but, in all candor, it must be recognized [as we did in reference to the order in Hight, supra, 148 P.2d p. 480] that adoption affects, and is interrelated with, custody; and the effect of the subject adoption order is to terminate any right DeGolyer previously had, as Denise's legal father, to her custody and to vest that right in Chesney. In this connection, notice In re Francis [Ohio Probate], 75 N.E.2d 700, 703. For this reason, we cannot say that the above cited principle concerning the effect of the death of one of a child's parents upon his or her custody is beyond consideration in adoption cases. However, this does not mean that the trial court was incorrect in rejecting any idea that Mary Lou Chesney's death rendered moot the adoption petition that she and the

Appellee had previously filed. Even in the case of In re Bird's Adoption, 183 Cal. App.2d 140, 6 Cal.Rptr. 675 [cited by Appellants], the court rejected that idea when it said in part [6 Cal.Rptr. p. 680]: "We have accordingly come to the conclusion that while the death of Mrs. Celusta did not, in and of itself, require that the court vacate and set aside the decree of adoption . . . ." This statement is bolstered in an unequivocal and unmistakable manner by Wallace v. Lougee, 107 N.H. 251, 221 A.2d 780, where the child's father's consent to the adoption involved had been ruled unnecessary because of his abandonment of the child, and the mother, who had the child's custody, signed a consent to his adoption, but died before the adoption petition was filed. There, the court, after noting that no statutory provision operated to invalidate the mother's consent, and that it was never withdrawn, either before, or after, it was acted upon, said, concerning her consent [221 A.2d p. 783]:

> "Being personal in nature, and having been given as provided by statute and during the mother's lifetime, no compelling reason is suggested why it should not remain effective after her death. See McCutcheon's Estate, 283 Pa. 157, 128 A. 843."

There, the court also noted that the situation which, under the New Hampshire statute, rendered the father's consent to the adoption unnecessary [his abandonment of the child] "is not to be considered 'an ambulatory thing the legal effects of which a delinquent parent may dissipate at will by the expression of a desire for the return of the discarded child' [citing cases]." Similarly, we think that DeGolyer's delinquency about supporting Denise, with its legal effect of rendering unnecessary his consent to her present adoption, is not an ambulatory thing which can be recalled, cancelled out, or nullified merely by a change of his mind or desire. Accordingly, for reasons similar to those expressed in Wallace, supra, we hold that the trial court did not err in finding and concluding that Mary Lou Chesney's untimely death did not affect the petition that she and the Appellee had previously filed for the adoption of Denise; and we also hold that this applies to all of the proceedings that had occurred previous to said death. However, this determination is not intended to preclude judicial consideration of the effects of Mary Lou's death upon other aspects of the case. In this connection, notice again Bird's Adoption, supra.

The unusual factual situation in this case singles it out as a difficult one for application of previously adopted general rules, especially when it is recognized that Mr. Chesney, as to Denise, has the status of a stepparent which arises out of his marital relationship with the child's legal mother [Bird's Adoption, supra, 6 Cal.Rptr. p. 679]; and Denise, who is now ten years old, has lived in his home ever since she was about three and a half years old. Thus, although since Mary Lou's death in February, 1972, Chesney has had no wife to act as Denise's mother and he has had to rely largely upon good hired help to assist him in her care, at the same time, according to the undisputed evidence, Denise has known, and become accustomed to, and excellent adoptive home and its security and stability has been an important part of her life since an early age. The prospect of disrupting this security and stability weighed heavily upon the trial court's deliberations as is evidenced by his remarks in announcing his decision:

> ". . . there is a regrettable lack of a mother in the home, but in this Court's opinion there is an absolute vacuum of evidence of any needed change in her life; and that the best interests of the child could not be served by again disrupting her life, but that she should be allowed to remain where she is, without any further confusion and upset."

There can be no doubt of the sufficiency of the evidence to support the trial court's oral observation and finding that in Chesney's home Denise's "current needs are abundantly satisfied and . . . her future needs are being prepared for adequately." Whether DeGolyer

852

or Chesney had the fitness for Denise's custody to serve her best interest was a question of fact to be determined by the trial judge in the first instance. Because of his opportunities to observe the parties and their witnesses at first hand during the many occasions when these cases were before him, we think he was in a better position than this Court to read the characters of both DeGolyer and Chesney and to determine in which of their two homes Denise's health and welfare would be best served. It is therefore our opinion that, on this issue, as on other issues of fact in domestic cases generally, we should not overturn his decision unless it is clearly against the weight of the evidence. From our examination of the record, we cannot reach this necessary conclusion.

Appellants argue additionally that the trial court erred in denying their oral motion that the Chesney petition for Denise's adoption be not finally acted upon until the investigation required by 10 O.S. 1971, § 60.13, could be conducted. The trial court deferred ruling on this motion until he had heard the evidence, but, in his final decision granting the Chesney petition, he held that such an investigation is not legally required in view of the last paragraph of the cited statute, which reads as follows:

"Provided, that if the child petitioned to be adopted shall be the natural or adopted child of either of the petitioners, then no investigation shall be made."

Here, as hereinbefore shown, Denise, who was "the child petitioned to be adopted" in the Chesney petition, was the "adopted child" of Mary Lou Chesney, who executed that petition as one of the petitioners. We agree with the trial court that the above quoted statutory provision manifests an intention of the Oklahoma Legislature in enacting it that the requirements contained in paragraphs (1), (2), and (3) of § 60.13 were not to apply to adoptions such as the one sought in that petition. Such an intention is a reasonable and logical one with reference to such adoptions, which, as we have noted, are referred to in footnote 2

of the Bird's Adoption opinion, supra, as "stepparent adoptions", where several good reasons for a distinction between such adoptions, and others, are pointed out.

As we have determined that the trial court's decrees granting the Chesney petition for Denise's adoption and denying the DeGolyer petition for her adoption are neither contrary to law nor against the weight of the evidence in this case, the same are hereby affirmed.

WILLIAMS, V. C. J., and IRWIN, HODGES, LAVENDER, and SIMMS, JJ., concur.

DAVISON, C. J., and BERRY, J., concur in result.