Pamela K. Linch WEBER, Appellant,

v.

Dorothy LINCH, Appellee.

No. 51360.

Court of Appeals of Oklahoma, Division No. 1.

March 7, 1978.

Released for Publication by Order of Court of Appeals March 30, 1978.

Porta, Bass & Bass by John A. Bass, El Reno, for appellant.

Shutler, Baker, Simpson & Logsdon by Harold Logsdon, Kingfisher, for appellee.

BOX, Presiding Judge:

An appeal from the appointment of appellee, Dorothy Linch, guardian for her two grandchildren, and from the denial of the application for writ of habeas corpus on behalf of the natural mother, Pamela K. Linch Weber, appellant.

Appellant and John Linch were married for almost ten years with two children born of the marriage, Brian, currently age nine, and Charlotte, currently eight years of age. John Linch was the son of appellee. In January of 1977, appellant left John Linch and moved to Idaho with Larry Weber, with whom she has continued to live. Appellant took the children with her to Idaho. On February 25, 1977, a decree of divorce was entered between appellant and John Linch. Although the parties had agreed appellant would have custody of the two minor children, the court, *on its own motion*, changed the custody to John Linch in the decree. However, John Linch made no attempt to take custody of the children and they continued to reside with their mother in Idaho until appellant brought the children back with her to Oklahoma in June to attend a hearing on a Motion for New Trial filed by her in the divorce case. The parties agreed to a continuance with the children to reside with John Linch during the continuance.

While the children were visiting John Linch and while the Motion for New Trial was pending, Mr. Linch was killed in a car accident on July 17, 1977. Appellee, the paternal grandmother, began providing for the children upon her son's death and refused requests by appellant to return the children to her.

After John Linch's death, appellant married Larry Weber on August 4, 1977. Mr. Weber has custody of his four sons by a prior marriage and appellant is currently pregnant, although it is unclear whether the father is John Linch or Mr. Weber. On August 8, appellant filed an application for a writ of habeas corpus for the return of the two children. On August 15, appellee filed her petition for appointment as guardian over the persons and estates of the two minors. The same trial judge who granted the divorce presided over both proceedings.

On August 15, the trial court denied the application for the writ of habeas corpus and held it was for the best interests of the children to be placed in the custody of appellee. However, the court retained jurisdiction stating he would hear any motion after the lapse of one year for modification of custodial rights if there was a change of circumstances. On August 25, appellee was appointed guardian. The trial court's ruling in both matters is the subject of this appeal.

When the Supreme Court assigned this appeal to the Court of Appeals, Division No. 1, certain motions were pending. Appellant's Motion to Accelerate Disposition of Case is rendered moot by the preparation of this opinion. Appellant's Motion to Strike the Appellee's response to the Motion to Accelerate Disposition of the Case is hereby granted inasmuch as appellee's response contained matters outside the record which this Court will not consider.

The issue to be determined on appeal is whether the trial court erred by awarding custody of the two minor children to the paternal grandmother over the protests of the natural mother in the habeas corpus proceeding and thereafter appointing the grandmother guardian. We hold that the trial court did err.

 Although custody was awarded to John Linch by the divorce decree, upon his death the legal custody of the children inured to appellant and it was unnecessary for her to seek modification of the divorce decree. The court's jurisdiction ceased as to control and custody of the children. See *Ingles v. Hodges*, 562 P.2d 845, citing *Hughes v. Bowen*, 193 Okl. 269, 143 P.2d 139 and *In re Rodgers*, 492 P.2d 324. The Supreme Court in *Ingles* held at page 846:

> It is error in any action to grant custody to grandparents over the protest of the natural father, *where evidence does not clearly establish the unfitness of the father to have custody of his children at the time of the hearing.* (Emphasis added. Footnote omitted.)

Furthermore, parents must be affirmatively, not comparatively, shown to be unfit with the evidence of unfitness clear and conclusive and the necessity for depriving the parent of custody shown to be imperative. *Marshall v. Marshall*, 555 P.2d 598; see also *DeGolyer v. Chesney*, 527 P.2d 844; *Alford v. Thomas*, 316 P.2d 188; *McVey v. Chester*, 288 P.2d 740; *Hyde v. Kuhlman*, 48 O.B.J. 174.

The evidence reveals that appellant and her new husband plan to move to Okarche and live in a four bedroom modular home, about 1700 square feet of living area, with Mr. Weber's four sons and the new baby. Mr. Weber testified he wanted appellant's two children to come live with them, he tried not to show partiality, he loved the children, and all the children seemed to get along fairly well with just normal problems. Mr. Weber is a truck driver and believes he could adequately support the Linch children.

As to appellant's ability as a mother, appellee stated during the habeas corpus hearing (page 53) that "I would say she was a good mother, other than just not being quite strict enough and, there again, I'm the mother-in-law. I don't feel that I should criticize her too much on that, Mr. Shutler." And on page 57, appellee testified:

> A I would say up until—I'm sorry, Mr. Bass, I would say that she was a good mother until the latter part of last year, and you must understand that I'm a little upset since that time.
> Q But that's when your opinion changed?
> A My opinion hasn't changed that much. I still love that girl. I love her dearly.

Appellee also testified "the children love their mother very much." Furthermore, the trial judge stated on page 70: "Everybody agrees that Pam was a good mother, even the grandmother." The evidence simply did not meet the strict burden required to show appellant to be an unfit mother.

The trial judge relied on several factors to give custody to appellee. One was the fact that there was "moral turpitude" in the divorce. The circumstances surrounding appellant's and John Linch's divorce occurred in January and February of 1977. The Supreme Court in *McVey v. Chester*, supra at 742, stated:

> Another rule very pertinent in the instant case is that a parent's fitness to have the custody of a child must be determined as of the time of hearing of the petition.

See also *Ingles v. Hodges*, supra.

Another factor the trial judge relied upon was the fact appellant remarried within six

months of her divorce from John Linch. He stated on page 80:

> One of the factors in my ruling, Gentlemen, is the August 4th marriage. They could have waited 21 more days, which is in direct contempt of the Court's Order.

Without ruling on whether the fact a party's remarriage within six months would ever contribute to a showing of parental unfitness, 12 O.S.1971, § 1280 provides it is unlawful for either party to a divorce action *"whose former husband or wife is living"* (Emphasis added) to marry another within six months. John Linch was dead when appellant married Larry Weber.

Appellee resides with her 88 year old father and their joint income is $3,000 to $4,000 per month. They intended to build a four bedroom home for themselves and the two children. However, the mere fact that a child might be better cared for by a third person is not sufficient to justify taking a child from its parent. *Marshall v. Marshall*, supra; *Jamison v. Gilbert*, 38 Okl. 751, 135 P. 342; *Hyde v. Kuhlman*, supra.

Allegedly, the children stated a preference to remain with appellee. In *Ingles v. Hodges*, supra at 846, the Supreme Court stated:

> The mere fact children state a preference for their grandparents, who could well care for them, is not sufficient to justify taking them from their father. (Footnote omitted.)

See also *Jamison v. Gilbert*, supra.

Appellant was not affirmatively shown to be an unfit mother by clear and convincing proof. The trial court erred by refusing appellant's application for a writ of habeas corpus. The cause is reversed with instructions to grant appellant's writ of habeas corpus to recover custody of Charlotte and Brian Linch from appellee. It is further ordered that the letters of guardianship issued to appellee be vacated and set aside.

REVERSED WITH INSTRUCTIONS.

ROMANG and REYNOLDS, JJ., concur.