In the Matter of the ADOPTION OF MICHELLE N., a minor.

KENNETH P. N., Appellant,

v.

ANN CARROLL B. and John B., Appellees.

No. 50159.

Supreme Court of Oklahoma.

April 4, 1978.

O. Christopher Meyers, Godlove, Joyner, Godlove, Garrett & Meyers, Inc., Lawton, for appellant.

T. Dale Nicklas, Nicklas, Saenz & Nicklas, Inc., Lawton, for appellees.

BERRY, Justice:

John B. and Ann Carroll B., formerly Ann N., petitioned district court for adoption of Michelle N., Mrs. B.'s daughter by a previous marriage. As part of their petition, the Bs, asked for an order that the adoption proceed without consent of the natural father, Kenneth P. N., because N. willfully failed to pay child support according to terms of the decree in Ns.' divorce, and that willful failure had continued for one year.

The petition for adoption and application for order that the child be considered eligible for adoption without consent were filed August 20, 1975. Kenneth P. N., appellant herein, appeared and contested the petition and application. After considering evidence concerning N.'s failure to pay child support during the period beginning August 20, 1974, trial court held failure to pay was willful. N. then perfected his appeal to this Court. Appellees are the Bs.

The sole issue raised on appeal is error in trial court's ruling the child eligible for adoption without consent of her natural father, appellant, by reason of his willful failure, for a period of one year, to pay child support in accordance with a valid decree of divorce. See 10 O.S.Supp.1975 § 60.6.

The question of willful failure to support is a fact question. On review of matters concerning eligibility for adoption without consent, we will not disturb trial court's ruling unless the ruling is clearly against the weight of the evidence. *DeGolyer v. Chesney*, Okl., 527 P.2d 844.

At trial parties agreed on certain matters of fact: N. and Mrs. B. had once been married to each other; Michelle was born of that union; a valid divorce was granted by the State of North Carolina in July 1973. The divorce decree awarded custody of Michelle to Mrs. B. and required N. to make regular monthly payments of child support. Payments were properly made until April 1974. N. failed to make payments after April 1974. No payments of child support had been made for more than one year next preceding filing of petition for adoption in district court.

The gravamen of this appeal is whether failure to pay child support was willful. Evidence shows N. was imprisoned in North Carolina on state charges of possession and delivery of marijuana and conspiracy to import marijuana into the state. He was in prison from April 1974 to January 1975. In February 1975, N. visited Mrs. B. at her home and, upon being denied visitation with the child, refused to pay over any of the child support money he had with him.

The Bs., and Michelle, relocated in North Carolina in February 1975, and moved to Oklahoma at the end of March 1975. The evidence of N. was to the effect that he was unaware of Bs.' whereabouts from April 1975 until sometime in July 1975. However, N.'s Oklahoma counsel contacted Bs. about visitation on July 30, 1975.

No payments of child support were made from April through July 1975, and none were made during the period before filing of petition below and after the time N. knew Bs.' whereabouts.

N. testified while imprisoned he was paid $308 per month, as his salary from employment on a work release type program. He was so employed throughout the period material to our consideration. He received, for his own use, about $40 per month; $100 per month was sent to his current wife; $118 per month was paid for room and board at the prison and the balance went into a sort of institutional savings program for N.'s eventual benefit. He did not testi-

fy to any effort on his part to have this savings account applied toward the child support obligation. He did not indicate he contributed any portion of the $40 spending money for child support.

N. testified he arranged with his mother to make child support payments during his period of incarceration. Evidence showed she was to have advanced the necessary funds. The testimony of N.'s mother, although internally inconsistent, could be interpreted by the trial court as confirming N.'s testimony. While N. was in prison his mother made several telephone calls to Mrs. B., and wrote her several letters, promising to pay child support. No payments were forthcoming. Evidence offered by N.'s mother indicates Mrs. B. would not engage in telephone conversation or answer her letters. That is apparently the sole basis for the contention, in the trial court, that Mrs. B. refused child support payments.

We are not concerned here with a prisoner who had neither the opportunity nor the means to support. Even though he could have made some payments the facts show N. failed to contribute any support for the child. Upon release from prison N. continued to refuse to pay support of any kind, even while he had the money in his pocket. We cannot say N. did other than ratify his previous failure to pay child support.

N. took no legal action to modify support; nor did he seek to enforce visitation. Rather, he chose to ignore the decree of the North Carolina court. We will not condone failure to support as a legitimate self-help remedy for denial of visitation. In this state of facts we cannot say N. was financially or otherwise unable to pay child support during his period of incarceration or afterwards. Compare In re Adoption of Eddy, Okl., 487 P.2d 1362.

N.'s attitude toward support may be explained by reference to his meeting with Mrs. B. in February 1975. As mentioned, on that occasion N. was seeking visitation with the child. Mrs. B. refused visitation, citing N.'s failure to support as her reason. Rather than pay over the money he then had on him, and which he testified was intended for payment, and rather than take any legal action to enforce visitation or readjudicate support, N. simply did nothing. He continued to do nothing until after Bs. moved to Oklahoma.

On July 30, 1975, N.'s Oklahoma counsel wrote to Bs. attempting to settle the visitation matter. Neither then nor at any time thereafter until petition for adoption was filed was there any tender of current child support or any part of the arrearage in child support.

Trial court heard the testimony and had the opportunity to observe the witnesses, their bearing and demeanor. Based upon the record, as reflected in the above recitation, we cannot say trial court's decision was contrary to the weight of the evidence.

Affirmed.

LAVENDER, V. C. J., and IRWIN, BARNES and DOOLIN, JJ., concur.

HODGES, C. J., and WILLIAMS and SIMMS, JJ., dissent.

SIMMS, Justice, dissenting:

The evidence does not support a finding that Kenneth N. *willfully* failed to pay child support for the twelve month period preceding August 20, 1975, and I respectfully dissent.

Before discussing his failure to support Michelle, it is important to point out that Kenneth N. has never challenged the jurisdiction of Oklahoma's courts over his person and his parental rights. He submitted to the jurisdiction of the district court. The question of whether Oklahoma's jurisdiction would survive a challenge by a parent whose failure to comply with a sister state's support order while the parties were residents of that state and subject to its laws, is not before us. The majority opinion, therefore, should not be interpreted as authority on that issue.

Appellees' petition to adopt Michelle and application for an order to proceed without the consent of her father based upon his willful failure to pay child support for one

year next preceding the filing,[1] was filed on August 20, 1975. The period of time which is material to our inquiry therefore, is August 20, 1974, to August 20, 1975.

From August, 1974, until January, 1975, Mr. N. was participating in a prison work release program. He testified that he had no income other than the wages he earned on the program and that the manner in which those wages were distributed was not within his discretion. He testified that the North Carolina correctional authorities, without his direction or consent, took from his monthly income $108.00 for his current wife's support, $118.00 for his board and room, and, with the exception of $40.00 allowed him for personal expenses, placed the remainder in an escrow account which was for his eventual benefit but that he could not reach those funds until his release from custody. There was no evidence which controverted this testimony. Neither was there any evidence which disputed his testimony that the only reason he did not make his child support payments while he was in prison was because he had no money.

The majority's affirmance of this judgment is based upon the failure of Kenneth N.s' *mother* to make his support payments while he was in prison. Without citation of supporting authority, the majority holds that because his mother, Mrs. Meshaw, "was to have advanced the necessary funds" during his incarceration, it cannot be said that "N. was financially or otherwise unable to pay child support during his period of incarceration or afterwards." I cannot agree. Whether his mother did or did not make those payments for him is not an issue in this action. The issue before us is whether *KENNETH N.* willfully failed to pay his child support for a period of twelve months. The majority's decision is based upon an implicit finding of agency. How

else could the failure of N.s' mother to make the payments be attributable to him—so that her failure to pay became his willful failure to pay? I am not aware of any authority to support this application of agency principles to the law of domestic relations and I cannot concur in its adoption by the majority.

Whether Kenneth N. willfully failed to pay child support during his imprisonment must be determined from his actions *alone*. His undisputed testimony was that from August, 1974 until January, 1975, he had only $40.00 a month on which to live. I do not believe that a man who fails to make child support payments of $135.00 a month because he has an income of only $40.00 a month has "willfully failed" to make those payments within the intent of 10 O.S.1975 Supp., § 60.6.

I believe that the actions of Kenneth N.s' mother are absolutely irrelevant to the proper resolution of this action, but, since her failure to pay is the basis of the majority's affirmance, I must add that I also do not agree with the majority's interpretation of the evidence pertaining to her efforts to support Michelle. In my opinion, the evidence shows that Mrs. B. *refused* Mrs. Meshaw's offers to pay the child support. See, *In re Adoption of Gregory*, Okl., 495 P.2d 1275 (1972).

It may be that *after* his release from custody in January, 1975, Kenneth N. did willfully fail to support his daughter; but January, 1975, to August, 1975, is not twelve (12) months.

A full year of complete nonsupport is required before consent of a natural parent is not necessary in an action to adopt a child. In *Mann v. Garrette*, Okl., 556 P.2d 1003 (1976) we held that only one support

---

1. 10 O.S.Supp.1975, § 60.6 provides in pertinent part: A legitimate child cannot be adopted without the consent of its parents, if living, nor a child born out of wedlock without the consent of its mother, if living, except that consent is not necessary from a father or mother: * * (3) Where a parent has wilfully failed, refused or neglected to contribute to the support of his child, as provided in the decree of divorce, or

according to his financial ability if no provision for support is provided in the decree, for a period of one (1) year next preceding the filing of a petition for adoption of such child; and where the above conditions exist it shall not be necessary to terminate parental rights under Section 1130 of this title prior to the adoption of said child. * * *.

payment made less than one year next preceding the filing of the petition for adoption is sufficient to prevent the adoption without consent, even where that one payment is made only on advice of an attorney to prevent the one year period from running. In *Mann* we relied upon the following quotation from *Heard v. Bauman*, 443 S.W.2d 715 (Tex.Sup.1969), which is also relevant in this action:

" 'While adoption statutes are generally given a liberal construction, the rule of strict construction applies in favor of a non-consenting parent. This is especially true in cases in which it is asserted that because of the parent's misconduct toward the child, his consent to the adoption is not required. Every intendment should be made in such case in favor of the parent's claim; and where the statute is open to construction and interpretation, it should be construed in support of the parent's natural rights.' "

Our statute requires willful nonsupport for a *full year* next preceding the filing of the adoption petition. Taken in its strongest light, the evidence here shows willful nonsupport for only seven (7) months.

Additionally, I do not believe that a "weight of the evidence" test is a sufficient standard of proof in this action. The effect of this action—a decree of adoption without N.' consent—is the same as a decree terminating parental rights under 10 O.S.1971, § 1132; it deprives N. of all rights in and to his daughter. See, *Wade v. Brown*, Okl., 516 P.2d 526 (1973). When such fundamental rights are at issue, the standard of proof must be at least clear and convincing proof. See: *Alsager v. District Court of Polk Cty., Iowa*, 406 F.Supp. 10 (S.D.Iowa 1975), aff'd 545 F.2d 1137 (8th Cir. 1976); *special concurring opinion, In the Matter of Christopher H. aka C.*, (1978); *dissenting opinion, In the Matter of Keyes*, Okl., 574 P.2d 1026 (1977).

I would reverse the judgment of the trial court.

I am authorized to state that HODGES, C. J., and WILLIAMS, J., join me in this dissent.