660 P.2d 139 (1983)
In the Matter of the ADOPTION OF V.A.J., a minor child.
Barbara BASS and Dennis BASS, Appellees,
v.
Allen Clayburn JUSTUS, Appellant.
No. 55187.
Supreme Court of Oklahoma.
March 15, 1983.
Douglas Loudenback, Loudenback & Cox, Stan L. Foster, Legal Aid of Western Oklahoma, Inc., Oklahoma City, for appellees.
D. Hays Foster, Gary G. Lyon, Legal Intern, Oklahoma City, for appellees.
*140 OPALA, Justice:
The principal issue for review is whether under the terms of 10 O.S.Supp. 1974 § 60.6(3)[1] life imprisonment of the natural father for murder is sufficient per se to establish the son's eligibility for adoption without paternal consent on the grounds of wilful failure to support the child according to one's financial ability. We answer in the negative.
The natural parents of Von Allen Justus [child] were divorced in 1976. The mother remarried. Two years before the divorce, the natural father had been convicted of first degree murder. His sentence was commuted to life imprisonment. The divorce decree imposed no support obligation upon the father. Custody of the child was awarded to the natural mother. The custodial stepfather then sought to adopt the child without consent of the natural father. The trial court granted the adoption  pursuant to 10 O.S.Supp. 1974 § 60.6(3)  without the consent, and over the objection, of the father. The basis for dispensing with consent was the trial court's finding that the father wilfully failed to provide any monetary support. The record reveals that during his incarceration, prior to the adoption proceedings, the natural father had an income of $25.00 per month. He maintained contact with his son by visits and sent the child gifts,[2] but never any money. This appeal by the father is from the order by which his parental rights came to be terminated.

I.
This court held in Matter of Adoption of Michelle N.[3] that a natural father, who had been imprisoned at least partially during the twelve-month period preceding the adoption's commencement, had wilfully failed to comply with a divorce decree's support obligation. Michelle is distinguishable from the case at bar. The natural father in Michelle, who had a monthly income of $308 from employment in a work-release program, failed to comply with a court order of support. Here the father is alleged to have failed to contribute according to his financial ability when his only monetary resource consisted of $25.00 per month contributed to his upkeep by his parents.[4] In Michelle we did anticipate that a prisoner may be "financially or otherwise *141 unable to pay child support during his period of incarceration or afterwards."[5]
We cannot agree that here the father's failure to contribute any portion of his limited funds to support his son constituted "wilful failure, refusal and neglect to provide according to his financial ability." The father was a beneficiary of his parents' largesse. The meager monthly stipend  which could be granted or withdrawn at will  should not be considered as a resource in gauging the father's ability to contribute. The record reveals the father clearly has no other source of income. In the eyes of the law he should stand before the court as a resourceless prisoner. His ability to contribute should be judged without regard to his parents' largesse.

II.
The dispositive issue to be decided here is hence whether, under the terms of 10 O.S. Supp. 1974 § 60.6(3), imprisonment for life affords a legally tenable basis for allowing adoption without the natural father's consent on the grounds of wilful failure to contribute to the support of the minor child.
It is well-settled that adoption statutes must be strictly construed.[6] Strict construction favors the rights of natural parents when the controversy is with one who seeks to destroy the parental status. Parents have a fundamental, constitutionally-protected interest in the continuity of the legal bond between themselves and their children. The integrity of familial status is a value to be regarded with great solicitude.[7]
The statutory language of § 60.6(3) is clearly devoid of any explicit legislative intent that imprisonment for any crime or for any duration afford a ground for dispensing with a parent's consent.[8] The statute requires wilful failure or refusal to contribute.[9] Imprisonment cannot be equated with wilful failure to contribute to the child's support. The natural father is not to be deemed wilful when, as here, incarceration prevents his making any contribution to the child's support.[10] The proper inquiry to address in this case is whether the natural parent intentionally incapacitated himself for the purpose of avoiding the duty imposed by law; if so, then imprisonment may constitute justification for dispensing with his consent in the adoption proceeding.[11] The evidence here does not support an inference that the father's commission of a felony, and subsequent incarceration therefor, was for the purpose of avoiding his support obligation. Thus his incapacity to earn income and pay support may not be deemed "wilful".
A finding of the trial court on an issue here under review will not be disturbed on appeal unless it fails to rest on clear and convincing proof.[12] Here the record clearly discloses an erroneous reliance on the father's incarceration as a ground for dispensing with his consent to the adoption  a reason not sanctioned by § 60-6(3). The trial court erred in finding that the $25.00 was a resource to be considered in gauging the father's ability to contribute to his son's support. The order allowing *142 adoption without the father's consent is contrary to law and unsupported by clear and convincing proof.
The trial court's order is reversed.
IRWIN, LAVENDER and HARGRAVE, JJ., concur.
SIMMS, V.C.J., concurs specially.
BARNES, C.J., and HODGES, DOOLIN and WILSON, JJ., dissent.
HODGES, Justice, dissenting.
The principal issue presented on appeal is whether the life imprisonment of the natural father for three felony murders is sufficient justification for failure to support his child and to preclude the application of 10 O.S.Supp. 1974 § 60.6(3),[1] which permits adoption without parental consent for wilful refusal to support a child according to the parent's financial ability. The majority opinion holds that: 1) § 60.6(3) is clearly lacking in the expression of any legislative intent that imprisonment for any crime or for any duration is grounds for dispensing with parental consent, and 2) imprisonment cannot be equated with wilful failure to contribute to the child's support.
The natural father of V.A.J. was convicted of three counts of first degree murder; and was sentenced, in at least one of them, to death. He was transported to the Oklahoma State Penitentiary for execution, but after a ruling upon the constitutionality of Oklahoma's death sentence statute, his sentences were commuted to two concurrent terms and one consecutive term for life. He has been incarcerated at McAlester since May, 1974. In March 1976, the mother was granted a divorce and custody of V.A.J. Subsequently, the mother remarried, and her husband sought to adopt the child. The trial court granted the adoption pursuant to 10 O.S.Supp. 1974 § 60.6(3) without the consent, and over the objection, of the father, based on his wilful failure to provide any monetary support. The trial court in its pronouncement of judgment held:
"... the failure [of] respondent to contribute one thin dime to the support of his son [constitutes] wilful failure, refusal and neglect to provide according to his financial ability. Obviously, respondent had limited funds and means to provide but he completely failed to do anything."

I
A legitimate child cannot be adopted without the consent of its parents, unless they wilfully refuse, fail, or neglect to contribute to the support of the child for a period of twelve months either in substantial compliance with a support provision contained in a decree of divorce; or if no provision is made in the decree for support, according to the parent's financial ability to pay.[2] There is no real controversy concerning any payment of support by the father.[3] He has paid nothing since his incarceration. The father asserts that he is unable to pay because of his imprisonment. The mother and adoptive father contend that a natural parent, with slight prospect of release, or of contributing to the support of his child, should not be relieved of his support obligation because of imprisonment and block an adoption which is in the best interest of the child. I agree.
*143 Adoption statutes are in derogation of the natural rights of parents and must be strictly construed in favor of the parent.[4] However, the Legislature has provided that parental rights may be subrogated to the welfare of the child under defined circumstances.[5] The wilful abdication of the parental responsibility of providing support for a prescribed period of time has been declared a sufficient cause for forfeiture of parental rights; and the statute protects the right of a parent who cannot provide support for justifiable reasons.[6] Even so, the welfare of the child cannot be ignored.[7]
This case presents circumstances which require a pragmatic approach. The natural father, through his own fault, has placed himself in a position where he can provide neither financial assistance, nor a satisfactory relationship with his child, for an indeterminate number of years. He is serving two concurrent sentences and one consecutive sentence for life imprisonment as the result of his conviction in a triple murder. There is little prospect for release in the foreseeable future with miniscule chance of his ever offering parental support of any kind during the minority of the child.[8] He has not sent any money for support from his admittedly limited resources of approximately $25.00 per month.
I acknowledge that it would have been difficult for the father to send much money from his limited resources, but I am reminded of the "widow's mite," and it appears to me that the father was more interested in his own welfare rather than that of his son. The child is almost twelve years old, and about to enter the most sensitive period of adolescence. It is unquestioned that after the child reaches majority, he could elect to be adopted. Why should he be further burdened and punished for the crimes of the father? The adoptive father seeks to adopt the child and to provide the love, guidance, and companionship which the child needs; to give him the same name the boy's sister bears; and to prevent the stigmatization which must follow the son of a convicted murderer. To deny the child this opportunity merely to safeguard the parental rights of the natural father, whose conduct has prevented the fulfillment of his parental responsibilities, would be not only unjust, but not in keeping with the intent of the Legislature expressed in § 60.6(3).
This situation is obviously within the intention of § 60.6(3). When the statute permitting adoption without consent was adopted in 1957,[9] there was no need for the Legislature to provide that the consent of a person convicted of murder and sentenced to death by electrocution must be obtained before his natural child could be adopted. Until the United States Supreme Court found the death penalty, as then applied, to be unconstitutional in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and the imposition and execution of the death penalty under the law of Oklahoma to be cruel and unusual punishment in Justus v. Oklahoma, 428 U.S. 907, 96 S.Ct. 3216, 49 L.Ed.2d 1214 (1976),[10] the consent of Allen Clayburn Justus, the natural father of this child, would have become moot by operation of law. It is inconceivable to me that the majority evidently has no qualms about the adoption without consent of an habitual drunkard[11] under the statute, but cannot bring itself to deprive an habitual murderer of his parental rights. The Legislature recognized that there must be a system of checks and balances and a *144 weighing of the equities to protect minor children. This Court is not without power to give full viability to this legislatively instituted remedy, and it is the duty of the judiciary to supply by an appropriate pronouncement, whatever procedure which may be deemed necessary to implement an incomplete or deficient remedy.[12]
We recognize that there can be no set rule which will resolve the question of whether incarceration for a criminal offense is justification for wilful non-support under different circumstances, and each case must be decided under its own facts.[13] The issue of wilfulness is a fact question for the trial court. The evidence in this cause clearly and convincingly supports the trial judge's determination that the father's refusal to pay was wilful[14] within the intent of the statute, obviating the necessity of obtaining his consent to the adoption.[15]
We have consistently acknowledged the preciousness of the right to bear and rear one's children, but it is an awesome challenge which may be withdrawn based on one's refusal to meet the attendant responsibility.[16] The necessity of zealously guarding the integrity of the natural relationship of parent and child must be equated against the best interest of the child.[17]
I must, therefore, respectfully dissent.
I am authorized to state that Chief Justice DON BARNES and Justice JOHN DOOLIN join me in this dissent.
SIMMS, Vice Chief Justice, specially concurring:
I agree with the majority that incarceration is not a ground for adoption without consent under § 60.6, and I concur in its reversal of this action for that reason. I cannot agree with the majority's additional holding, however, that Justus' monthly stipend should have been ignored by the trial court in figuring his ability to contribute to the child's support.
The majority finds that because this $25.00 a month was a gift, rather than an enforceable claim, it was not a resource to be considered. This reasoning, however, would apply to every parent and would create a host of new problems in the area of child support, for very few adults have an enforceable claim for their next month's income. There is no justification for limiting judicial consideration of parental income to sums for which a lawsuit would lie, rather than the totality of resources available regardless of the source.
I do agree with the majority, however, that Justus' failure to support was not "wilful" under the statute. But, it is the negligible amount of the income, not its source which takes the failure outside the statute.
The income is simply not sufficient to afford any meaningful contribution toward the child's support. Justus' "financial ability" under the statute is virtually non-existent. This was, therefore, not a proper case to grant a petition for adoption without consent based on allegations of wilful failure to support.
Confusions pop up in this case because the action was brought for a reason other than what the statute is about. The parties, the trial court, and the members of this *145 Court, in their varied opinions, have all recognized that this action is about whether a parent who has been convicted of heinous crimes and will spend most, if not all, of his life in prison loses certain rights to his child so that he cannot block an adoption sought by the other parent.
There is no statute tailored to these circumstances which would authorize adoption without Justus' consent. The action was therefore brought under the support provision of § 60.6 only because, like the proverbial mountain  it's there.
All parents have the legal duty to support their children and § 60.6 could, in a proper case, be invoked against any parent, imprisoned or free.
But all parents are also entitled to invoke defenses against the reach of the statute which requires a "wilful" failure to contribute as ordered or according to financial ability. This is the same standard used for determining questions of indirect contempt for failure to comply with an order of support. Those actions are also based on the recognition that failure to comply must be "wilful" and that it is a defense to be unable to comply in a meaningful way. See, e.g., Standifer v. Standifer, 192 Okl. 669, 138 P.2d 825 (1943).
The trial court spoke of appellant's failure to send "one thin dime" for the child, but that would have been only an empty gesture. One dime a month would have been of absolutely no assistance in supporting the child and would mock the purpose of support statutes.
It goes without saying that there is considerable room for debate about the dollar figure which, under any particular facts, would show an inability to contribute or comply, as opposed to simply a diminished ability which would still require some contribution. Nevertheless, there clearly is a point at which reasonable men would agree that a parent's income is so limited that any meaningful contribution cannot be made. Additionally, that to require a payment of a portion of that limited resource, such as a dime a month, simply to stave off this type of action or a contempt proceeding celebrates form over substance.
If a father who was not in prison was able to garner monthly resources of only $25, would he be subject to the sanction of losing his children under § 60.6? I do not believe so, for in such a case we would undoubtedly find the failure was not wilful.
The fact of appellant's incarceration does not offer an "extra" reason for allowing adoption of his child for, as the majority correctly holds, incarceration is not a ground for adoption without consent. If it is to become one, that decision and its boundaries must be made by the legislature, not this Court.
NOTES
[1] The statute in effect at the time of this litigation was 10 O.S.Supp. 1974 § 60.6(3). The pertinent terms of § 60.6(3) provide:

"A legitimate child cannot be adopted without the consent of its parents, if living ... except that consent is not necessary from a father or mother:
* * * * * *
3. Where a parent has wilfully failed, refused or neglected to contribute to the support of his child, as provided in the decree of divorce, or according to his financial ability if no provision for support is provided in the decree, for a period of one (1) year next preceding the filing of a petition for adoption of such child ... ." The 1974 version of § 60.6(3) was further amended in 1981. Laws 1981, c. 107 § 1. The version in which the section appears in the 1981 compilation is different although the change does not affect the portions under consideration in this appeal.
[2] The record indicates that one such gift was a hat with a bead band that was made by the natural father. In Matter of Adoption of C.M.G., Okl., 656 P.2d 262 [1982], this court held that contributions to living expenses by a noncustodial natural parent constitute a provision of support under 10 O.S.Supp. 1974 § 60.6(3).
[3] Okl., 577 P.2d 68 [1978].
[4] In Matter of Adoption of Michelle N., supra note 3 at 70, the court stated that it was "not concerned here with a prisoner who had neither the opportunity nor the means to support."
[5] Matter of Adoption of Michelle N., supra note 3 at 70.
[6] In Matter of Adoption of Graves, Okl., 481 P.2d 136, 138 [1971].
[7] Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 [1972]; Matter of Delaney, Okl., 617 P.2d 886, 890 [1980].
[8] 10 O.S.Supp. 1974 § 60.6.
[9] The terms of 10 O.S.Supp. 1974 § 60.6(3) apply to a parent who "... has wilfully failed, refused or neglected to contribute to the support of his child ... ."
[10] In Jordan v. Hancock, 508 S.W.2d 878, 881 [Tex.Civ.App. 1974], the court noted that it was "... conceivable that one's involvement in crime might reflect his misdirected concern for the welfare of his child, rather than his disregard for it."
[11] Adoption of Coffee, 59 Cal. App.3d 593, 130 Cal. Rptr. 887, 891 [1976].
[12] Matter of Adoption of Darren Todd H., Okl., 615 P.2d 287, 289 [1980].
[1] It is provided by 10 O.S.Supp. 1974 § 60.6(3) in pertinent part:

"Where a parent has wilfully failed, refused or neglected to contribute to the support of his child, as provided in the decree of divorce, or according to his financial ability if no provision for support is provided in the decree, for a period of one (1) year next preceding the filing of a petition for adoption of such; ..."
[2] See note 1, supra.

Mann v. Garrette, 556 P.2d 1003, 1004 (Okl. 1976). It should be noted that 10 O.S.Supp. 1974 § 60.6(3) was amended in 1981 to provide for substantial compliance with a support provision contained in a decree of divorce; therefore, the token payment of Mann would presumably be insufficient to prevent the adoption.
[3] The standard which must be utilized by the court to determine wilful failure to pay is clear and convincing evidence. See Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In the Matter of C.G., 637 P.2d 66 (Okl. 1981); In the matter of Adoption of Darren Todd H., 615 P.2d 287, 290 (Okl. 1980).
[4] In the matter of the Adoption of Robin, 571 P.2d 850, 855 (Okl. 1977).
[5] In Re T.H.L., 636 P.2d 330, 332 (Okl. 1981).
[6] See note 1, supra.
[7] In the matter of the Adoption of Jones, 558 P.2d 422, 425 (Okl.App. 1976).
[8] The child was born January 24, 1971, and is now almost 12 years old.
[9] See 1957 Okla. Sess. Laws, Title 10, Ch. 2b § 7, codified as 10 O.S.Supp. 1957 § 60.7.
[10] See Justus v. State, 554 P.2d 109 (Okl.Cr. 1976).
[11] Pursuant to 10 O.S. 1981 § 60.6(1) consent is not necessary if the parent has been adjudged to be an habitual drunkard.
[12] Farris v. Cannon, 649 P.2d 529, 531 (Okl. 1982).
[13] See In re Brannon, 340 So.2d 654 (La. App. 1977) for similar treatment of analogous situation. See also, Annot., "Parent's Involuntary Confinement, Or Failure To Care For Child As Result Thereof, As Permitting Adoption Without Parental Consent," 78 A.L.R.3d 712 (1977); Annot., "Parent's Involuntary Confinement, Or Failure To Care For Child As Result Thereof, As Evincing Neglect, Unfitness, Or The Like In Dependency Or Divestiture Proceeding," 79 A.L.R.3d 417 (1977).
[14] See note 8, supra.
[15] Matter of Darren Todd H., note 3, 615 P.2d at p. 289.
[16] Skinner v. State of Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); In the matter of Rich, 604 P.2d 1248 (Okl. 1979); J.V. v. State, 572 P.2d 1283, 1284 (Okl. 1978); In the matter of the Adoption of Michelle N., 577 P.2d 68 (Okl. 1978).
[17] In Re Adoption of Dobbs, 12 Wash. App. 676, 531 P.2d 303, 305 (1975).