In the Matter of the ADOPTION OF J.R.M., a Minor,

Thomas R. HERGENREDER and Rebecca D. Hergenreder, Appellees,

v.

Doyle B. MADDEN, Appellant.

No. 82274.

Supreme Court of Oklahoma.

July 18, 1995.

Gary A. Taylor, Anthony B. McKesson, Larry E. Goins, Legal Aid of Western Oklahoma, Oklahoma City, for appellant.

Tom J. Wilcox, Midwest City, for appellees.

KAUGER, Vice Chief Justice:

Three issues are presented: 1) whether the adoptive parents[1] presented clear and convincing evidence[2] that the natural father[3] wilfully failed to comply substantially with court ordered support for the year preceding the filing of the adoption petition; 2) whether 10 O.S.1991 § 60.6,[4] allowing an adoption to proceed without parental consent for failure to provide court ordered support, violates a parent's procedural or substantive due process rights afforded by the United States Const. amend. XIV[5] or the Okla. Const. art. 2, § 7;[6] and 3) whether failure to notify a parent whose consent has been determined unnecessary for the adoption of a child of adoption proceedings violates due process of law. We find no error in the determination that the adoption could proceed without the father's consent. Nevertheless, because the only issue determined in a hearing initiated

---

1. The appellees, Thomas R. Hergenreder and Rebecca D. Hergenreder will be referred to collectively as Hergenreders/adoptive parents and, respectively, as adoptive father and mother.

2. *Matter of Adoption of J.L.H.*, 737 P.2d 915, 918 (Okla.1987); *Matter of Adoption of Darren Todd H.*, 615 P.2d 287, 290 (Okla.1980). See also, *Santosky v. Kramer*, 455 U.S. 745, 769–70, 102 S.Ct. 1388, 1403, 71 L.Ed.2d 599 (1982).

3. The appellant, Doyle B. Madden will be referred to as Madden or father.

4. Title 10 O.S.1991 § 60.6 provides in pertinent part:
   "A child under eighteen (18) years of age cannot be adopted without the consent of its parents, if living, except that consent is not required from:
   ... 2. A parent who, for a period of twelve (12) months immediately preceding the filing of a petition for adoption of a child, has willfully failed, refused, or neglected to contribute to the support of such child:
   a. in substantial compliance with a support provision contained in a decree of divorce,

or a decree of separate maintenance or an order adjudicating responsibility to support in a reciprocal enforcement of support proceeding, paternity action, juvenile proceeding, guardianship proceeding, or orders of modification to such decree, or other lawful orders of support entered by a court of competent jurisdiction adjudicating the duty, amount, and manner of support ..."
   Section 60.6 was amended in 1993. However, the portion of the statute quoted remains unchanged from the 1991 version.

5. The United States Const., amend. XIV provides in pertinent part:
   "... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws...."

6. The Okla. Const. art. 2, § 7 provides:
   "No person shall be deprived of life, liberty, or property, without due process of law."

pursuant to 10 O.S.1991 § 60.6 is the right to consent to adoption, due process requires that a parent whose consent has been determined unnecessary must receive notification of adoption proceedings.

## FACTS

Madden and the mother were married on March 18, 1983. During the marriage, they had one child, J.R.M. The Maddens were divorced on August 30, 1991. The divorce decree awarded custody of J.R.M. to the mother with the father to have standard visitation rights. Madden retained custody of N.B.M., a child from a previous marriage. The divorce decree ordered the father to pay $263.02 monthly for the support of J.R.M. and monthly child care of $115.50. Madden complied with the order for support and exercised his visitation rights until October 15, 1991. However, Madden admitted that he paid no child support from October 16, 1991 through January, 1993,[7] when the mother and the adoptive father filed a petition for the adoption of J.R.M.

When the Maddens were divorced, the father was employed at Tinker Air Force Base. In October 1991, he was terminated for illegal drug activities. Although the last day Madden reported to work was in September of 1991, he had the option of working through December at full pay.[8] After losing his job, Madden and N.B.M. moved in with Madden's mother. In January of 1992, a personal difference between Madden and his mother caused him and his son to move into a men's shelter where they resided until May 1, 1992. For three weeks during his stay at the shelter, Madden underwent treatment at a drug rehabilitation center in Kansas for alcohol and marijuana dependency. From October 1991 through May 1992, Madden was unemployed. He supported himself and

N.B.M. with the aid of charity and public assistance.

In May of 1992, Madden and N.B.M. moved into public housing; and Madden went to work for Modern Oil Company at a quick stop. He earned $5,236.49 in 1992 from this employment. Madden and N.B.M. moved in with Madden's present wife and her four children in October of 1992. Since then, he has been the sole source of support for the seven member household.

The Hergenreders filed a petition to adopt J.R.M. without Madden's consent on January 8, 1993, asserting that consent was unnecessary because Madden had not provided court ordered support during the previous year. After a hearing, the trial judge found in favor of the adoptive parents on the consent issue. He found that Madden had wilfully failed to provide support and that it was in the best interest of J.R.M. for the adoption to proceed without the father's consent. The trial judge's decision is reflected in a journal entry filed on August 11, 1993. On the next day, Madden filed a motion to stay the proceedings pending an appeal. The motion was heard and denied on August 31, 1993. On September 1, 1993, without notice to the father, a final decree of adoption was granted. Madden's motion to vacate the decree was denied. In an opinion issued on rehearing, the Court of Appeals affirmed. Certiorari was granted on May 31, 1995.

## I.

## THERE IS CLEAR AND CONVINCING EVIDENCE THAT THE FATHER WILFULLY FAILED TO PROVIDE COURT ORDERED SUPPORT FOR THE YEAR PRECEDING THE FILING OF THE ADOPTION PETITION.

Madden argues that under 10 O.S.1991 § 60.6 [9] a finding that consent is unnecessary

---

7. Between the time of the filing of the petition and the date of the hearing in the adoption proceeding, Madden paid a total of $220.00—approximately $55.00 per month—in child support for J.R.M.

8. Testimony of Madden's supervisor at Tinker Air Force Base taken during the hearing held on June 2, 1993, provides in pertinent part, pp. 58–60:

"... Q I am sorry. Let me get the question here. I need to get this answer straight. The

last day that Doyle Madden reported to work under your supervision was when?
A September of '91. He was terminated in December of '91....
Q Mr. Canary, you say that Mr. Madden could have worked for Tinker Air Force Base through and including December of '91.
A Yes.
Q He could have received a full paycheck?
A Yes.
Q He chose not to?
A Yes...."

9. Title 10 O.S.1991 § 60.6, see note 4, supra.

is appropriate only if there is a showing that the failure to support is wilful for each and every month during the twelve-month period before filing the adoption petition. The adoptive parents insist that they presented clear and convincing evidence of a willful failure to support. We agree.

The father relies solely on *Mann v. Garrette,* 556 P.2d 1003, 1006 (Okla.1976) in support of his assertion that a party seeking a consentless adoption must show wilful failure to support on a month-by-month basis. In *Mann,* the father made one court-ordered child support payment in a twenty-one month period. The payment was made specifically for the purpose of interrupting the running of the twelve-month time period contained in 10 O.S.Supp.1974 § 60.6.[10] We held in *Mann* that one child support payment, made less than one year preceding the filing of a petition for adoption, was sufficient to prevent adoption without the natural father's consent.

■ *Mann* is not helpful to the father. Madden relies upon what he calls the "correlative principle" of *Mann.* His theory is that, unless the adoptive parents can prove wilful failure for each and every month during the twelve month period preceding the filing of

the adoption petition, a consentless adoption may not proceed under 10 O.S.1991 § 60.6.[11] The language of § 60.6(2) does not require a finding based on each and every month of the annual period, and the father has not provided any extant case law to support his argument. As Madden recognizes, the statute does require "substantial compliance with a support provision." [12] Here, there was no attempt substantially to comply with the decree-ordered support. The father admits he made **no payment whatsoever during the year before the adoption petition was filed.** Although we recognize that for a portion of this period the father was on public assistance and without income, **during four months of this twelve month period, he supported a wife, N.B.M. and four step-children.**[13] In addition, even if we were to assume that the loss of his job for illegal drug dealings was an involuntary incapacitation sufficient to excuse his duty of support,[14] Madden's supervisor testified that **the father could have continued to work through December rather than opting to leave Tinker during October.**[15]

■ The issue of wilful non-support is a question for the trier of fact.[16] Here, there is uncontradicted evidence that Madden

**10.** The 1974 version of 10 O.S.1991 § 60.6, see note 4, supra, is substantially similar to the current statute. Title 10 O.S.Supp.1974 § 60.6 provides in pertinent part:

"A legitimate child cannot be adopted without consent of its parents, if living, nor a child born out of wedlock without the consent of its parents, if living, nor a child born out of wedlock without the consent of its mother, if living, except that consent is not necessary from a father or mother:

... (3) Where a parent has wilfully failed, refused or neglected to contribute to the support of his child, as provided in the decree of divorce ... for a period of one (1) year next preceding the filing of a petition for adoption such child ..."

**11.** Title 10 O.S.1991 § 60.6, see note 4, supra.

**12.** Title 10 O.S.1991 § 60.6, see note 4, supra. Madden's brief in chief provides in pertinent part on p. 10:

"... Although the statute has been amended since *Mann* was decided, the fundamental teachings of that case are still applicable—and

this Court has never retreated from its reasoning. The present statute still ties the trial court's inquiry to compliance or willful non-compliance with an existing order for support. Only now, the legislature has injected the concept of 'substantial' compliance with such an order.... (T)he court must determine whether the parent has substantially complied with *this support provision* in the twelve months immediately preceding the filing of the adoption case ..." (Emphasis in original.)

**13.** After the adoption petition was filed, Madden paid $220.00 in child support for J.R.M.—approximately $55.00 per month.

**14.** The incapacity inquiry turns on whether the natural parent intentionally incapacitated himself/herself for the purpose of avoiding child support obligations. *Matter of Adoption of V.A.J.,* 660 P.2d 139, 141 (Okla.1983).

**15.** See note 8, supra.

**16.** *Matter of Adoption of Darren Todd H.,* see note 2 at 289, supra; *Matter of Adoption of E.S.P.,* 584 P.2d 209, 211 (Okla.1978); *DeGolyer v. Chesney,* 527 P.2d 844, 849–50 (Okla.1974).

made no provision for support of J.R.M. between October 20, 1991 and January 1, 1993. Nevertheless, he supported five other children for a portion of this period. We find that the evidence is clear and convincing [17] that the father wilfully failed to provide court ordered support for the year preceding the filing of the adoption petition. Pursuant to 10 O.S.1991 § 60.6,[18] Madden's consent for the adoption of J.R.M. is unnecessary.

## II.

## TITLE 10 O.S.1991 § 60.6, ALLOWING AN ADOPTION TO PROCEED WITHOUT PARENTAL CONSENT FOR FAILURE TO PROVIDE COURT ORDERED SUPPORT, DOES NOT VIOLATE A PARENT'S PROCEDURAL OR SUBSTANTIVE DUE PROCESS RIGHTS GUARANTEED BY THE UNITED STATES CONST. AMEND. XIV OR THE OKLA. CONST. ART. 2, § 7.

Madden contends that 10 O.S.1991 § 60.6 [19] is facially unconstitutional and unconstitutional as applied to him in the consent hearing. He attacks the statute on substantive and procedural due process grounds. The adoptive parents assert that § 60.6 provides a parent whose consent is sought to be stricken with all protections afforded by the United States Const. amend. XIV [20] and the Okla. Const. art. 2, § 7.[21]

The father's argument that § 60.6 is unconstitutional on procedural grounds is unpersuasive. The procedural requirements for filing a petition for adoption without the consent of a parent are contained in 10 O.S. 1991 § 60.7.[22] Section 60.7 requires that the parent receive notice of the consent hearing. The notice must include the name of the child, the date of the hearing, and the grounds asserted to support a finding that consent of the parent is not required.

■■■ Procedural due process requires an inquiry into the constitutional adequacy of the State's procedural safeguards.[23] In *Matter of Adoption of J.L.H.*, 737 P.2d 915, 919 (Okla.1987), we considered the procedural requirements necessary in a proceeding for an adoption without consent. We found that where the mother had ample notice of the hearing and was afforded sufficient opportunity to appear and defend against the attempted judicial extinguishment of her consent power, the minimum standards of fundamental fairness in the due process clause were adequately met. Here, the father was notified, appeared and defended the consent action. We find that Madden, like the mother in *J.L.H.*, enjoyed the procedural safeguards guaranteed by the United States and the Oklahoma Constitutions.

The substantive component of the due process clause bars certain governmental action despite the adequacy of procedural protec-

17. *Matter of Adoption of J.L.H.*, see note 2, supra; *Matter of Adoption of Darren Todd H.*, see note 2, supra.

18. Title 10 O.S.1991 § 60.6, see note 4, supra.

19. Id.

20. The United States Const., amend. XIV, see note 5, supra.

21. The Okla. Const. art. 2, § 7, see note 6, supra.

22. Title 10 O.S.1991 § 60.7 provides in pertinent part:
    "... B. Prior to a hearing on the application, notice shall be given the parent whose consent is alleged to be unnecessary. The notice of the application shall contain the name of each child for whom application for adoption is made, the date for hearing on the application, and the reason that said child is eligible for adoption without the consent of said parent. Notice shall be served upon said parent in the same manner as a summons is served in civil cases, not less than ten (10) days prior to the hearing. If said parent resides outside of the county, said notice shall be served upon said parent in the same manner as a summons is served in civil cases, not less than fifteen (15) days prior to the hearing. If the location of said parent is not known and this fact is attested to by affidavit of the consenting parent, legal guardian, or person having legal custody of the child, notice by publication shall be given by publishing notice one time in a newspaper qualified as a legal newspaper, pursuant to the laws relating to service of notice by publication, in the county where the petition for adoption is filed. The publication shall not be less than fifteen (15) days prior to the date of the hearing...."

23. *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990).

tions provided.[24] In determining whether an action violates substantive rights, a balance must be struck between the right protected and the demands of society.[25] Madden's constitutional attack on 10 O.S.1991 § 60.6 on substantive grounds centers on an argument that because there may be less restrictive measures to force a parent to meet a support obligation—i.e., income assignment, tax refund intercept, garnishment, contempt of court, etc.—,[26] consentless adoptions based on non-support are unconstitutional.

The Court of Appeals addressed the precise issue presented here in *Matter of Adoption of Blevins*, 695 P.2d 556, 560–61 (Okla. App.1984). In *Blevins*, the appellate court recognized that a balance must be struck between a parent's liberty interest in maintaining a familial relationship with a child and the state's compelling interests in ensuring that children are not left without support. In striking the balance in favor of the consti-

tutionality of 10 O.S.1981 § 60.6, the Court of Appeals recognized the State's right to enforce parental financial support obligations. It held that § 60.6 strikes a correct balance in its provisions allowing adoptions without the consent of parents who are found wilfully to fail, refuse or neglect to support a child pursuant to court order. The Court of Appeals opinion in *Blevins* coincides with decisions of other courts who have considered constitutional challenges to consent-based adoption statutes.[27] It is also consistent with decisions of the United States Supreme Court in which it has been held that the fundamental liberty interest in familial integrity and privacy is not absolute or unqualified.[28]

■ We find that 10 O.S.1991 § 60.6,[29] allowing an adoption to proceed without parental consent for failure to provide court ordered support, does not violate a parent's

**24.** *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986).

**25.** *Youngberg v. Romeo*, 457 U.S. 307, 320, 102 S.Ct. 2452, 2460, 73 L.Ed.2d 28 (1982).

**26.** We note that failure of a parent to have a non-supporting parent cited for contempt for refusal to obey a child support provision does not constitute a waiver or acquiescence in the conduct preventing the custodial parent and step-parent from adopting the child without consent. *In re Adoption of Eddy*, 487 P.2d 1362, 1367 (Okla. 1971).

**27.** *Stjernholm v. Mazaheri*, 180 Colo. 352, 506 P.2d 155, 158 (1973) (Statute providing that a stepchild may be available for adoption upon the written and verified consent of the parent in a step-parent adoption where other parent has abandoned child for a period of one year or more or where he has failed without cause to provide reasonable support for the child for a period of one year or more does not deny parent substantive due process and is constitutional.); *Horlock v. Oglesby*, 249 Ind. 251, 231 N.E.2d 810, 816 (1967), *appeal dismissed*, 390 U.S. 718, 88 S.Ct. 1418, 20 L.Ed.2d 253 (1967) (Statute permitting dispensation with consent of parent to adoption if parent fails to support child for one year was not unconstitutional on due process or equal protections theories as applied to father who was able to support child but did not.); *In re Coile*, 343 So.2d 325, 329 (La.App.1977), *writ refused*, 345 So.2d 902 (La.1977) (Statute permitting adoption of child without consent of child's natural father where father fails to support child for period of one year was not unconstitutional, either because its title included more than one

object, because it violated constitutional prohibition against abolishment of forced heirship, or because it deprived natural parent of his parental rights without due process of law.). See also, *Caban v. Mohammed*, 441 U.S. 380, 387, 99 S.Ct. 1760, 1765, 60 L.Ed.2d 297 (1979) (The Supreme Court upheld a New York statute against a constitutional attack which allowed a nonconsensual adoption if a parent "abandoned" a child. Although the Court did not directly address the parent's duty to support, the New York court had defined abandonment pertaining to adoption as "such conduct on the part of a parent as evinces a purposeful ridding of parental obligations and the foregoing of parental rights—a withholding of interest, presence, affection, care and support." The Supreme Court also found that it was not its function to hypothesize independently on the desirability or feasibility of any possible alternatives to the statutory scheme formulated by New York.); Annot., "Validity of State Statute Providing for Termination of Parental Rights," 22 A.L.R.4th 774, 783 (1983); L. Laskiewicz, "A Survey of State Law Authorizing Stepparent Adoptions without the Noncustodial Parent's Consent," 15 Akron L.R. 567 (1982).

**28.** See, *Lehr v. Robertson*, 463 U.S. 248, 256, 103 S.Ct. 2985, 2990, 77 L.Ed.2d 614 (1983); *Santosky v. Kramer*, 455 U.S. 745, 766, 102 S.Ct. 1388, 1401–02, 71 L.Ed.2d 599 (1982); *Lassiter v. Department of Social Serv.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981); *Stanley v. Illinois*, 405 U.S. 645, 645–46, 92 S.Ct. 1208, 1209–10, 31 L.Ed.2d 551 (1972).

**29.** Title 10 O.S.1991 § 60.6, see note 4, supra.

procedural or substantive due process rights afforded by the United States Const. amend. XIV [30] or the Okla. Const. art. 2, § 7.[31] This finding is based on the Oklahoma Constitution which provides bona fide, separate, adequate and independent grounds upon which we rest our holding.[32]

## III.

### BECAUSE THE ONLY ISSUE DETERMINED IN A HEARING INITIATED PURSUANT TO 10 O.S.1991 § 60.6 IS THE RIGHT TO CONSENT TO ADOPTION, DUE PROCESS REQUIRES THAT A PARENT, WHOSE CONSENT HAS BEEN DETERMINED UNNECESSARY, BE NOTIFIED OF ADOPTION PROCEEDINGS.

Madden insists that a proceeding eliminating the necessity for a natural parent's consent for adoption does not effect a termination of parental rights. Therefore, due process requires that the parent whose consent has been determined unnecessary be given notice of the adoption proceeding. The

Hergenreders contend that notice was not required. We disagree.

■ We addressed the nature of a hearing on adoption without consent in *Merrell v. Merrell,* 712 P.2d 35, 38–39 (Okla.1985). We determined in *Merrell* that **the sole issue governed by the procedures of a § 60.7** [33] **hearing was the right of parental consent in an adoption proceeding.**[34] **Absolute termination of parental rights is not decided at the time the consent issue is determined. Only when the final decree of adoption is entered are all parental responsibilities severed.**[35] Under *Merrell,* until an adoption is completed, the nonconsenting parent's duty of support continues.

The relationship of parents to their children is a fundamental, constitutionally protected right.[36] A consent proceeding does not terminate the parental bond.[37] Therefore, we find that parental rights are too precious to be terminated without the full panoply of protections afforded by the United States and the Oklahoma Constitutions.[38] Failure to notify a parent whose consent has been determined unnecessary for the adoption of a child of adoption proceedings violates due process of law.[39]

**30.** The United States Const., amend. XIV, see note 5, supra.

**31.** The Okla. Const. art. 2, § 7, see note 6, supra.

**32.** *Michigan v. Long,* 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983).

**33.** Title 10 O.S.1991 § 60.7, see note 22, supra.

**34.** *Matter of Adoption of J.L.H.,* see note 2, supra (The determination that an adoption may be effected without a parent's consent must be made in an ancillary proceeding anterior to the decree of adoption.).

**35.** Title 10 O.S.1991 § 60.16 provides in pertinent part:
"A. After the final decree of adoption is entered, the relation of parent and child and all the rights, duties, and other legal consequences of the natural relation of child and parent shall thereafter exist between the adopted child and the adoptive parents of the child and the kindred of the adoptive parents....
B. After a final decree of adoption is entered, the natural parents of the adopted child, unless they are the adoptive parents or the spouse of an adoptive parent, shall be relieved of all parental responsibilities for said child and shall have no rights over the adopted child or

to his property by descent and distribution...."

**36.** *Matter of Guardianship of S.A.W.,* 856 P.2d 286, 289 (Okla.1993); *Matter of Chad S.,* 580 P.2d 983, 986 (Okla.1978).

**37.** *Merrell v. Merrell,* 712 P.2d 35, 38–39 (Okla. 1985).

**38.** This finding is based upon the Oklahoma Constitution which provides bona fide, separate, adequate and independent grounds upon which we rest our holding. *Michigan v. Long,* see note 32, supra.

**39.** Notice is a jurisdictional requirement and a fundamental element of due process. Due process requires adequate notice, a realistic opportunity to appear and the right to participate in a meaningful manner. The right to be heard is of little value unless a party is apprised of rights which may be affected by judicial process. Due process is violated by the mere act of exercising judicial power upon process not reasonably calculated to apprise interested parties of the pendency of an action. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313–15, 70 S.Ct. 652, 656–57, 94 L.Ed. 865, 872–74 (1950); *Bailey v. Campbell,* 862 P.2d 461, 469 (Okla.1991);

## CONCLUSION

Before termination of parental rights may be effected without consent, clear and convincing evidence of a failure to support must be presented.[40] Here, Madden lost his ability to support J.R.M. through a voluntary act—his illegal activities related to drug activities. He also chose to leave his employment a full two months before he was required to do so. For a portion of the non-support period, he supported a seven member household. The evidence is clear and convincing of a wilful failure to support J.R.M.

Madden's claims of substantive and due process violations associated with the procedures followed for the hearing conducted pursuant to 10 O.S.1991 § 60.6[41] are unconvincing. The father received adequate notice and an opportunity to appear and to defend the support issue. Our finding that his constitutional rights to due process were adequately protected are based on the Oklahoma Constitution which provides bona fide, separate, adequate and independent grounds upon which we rest our holding.[42] Nevertheless, our decision in *Merrell v. Merrell,* 712 P.2d 35, 38–39 (Okla.1985) makes it clear that the only issue governed by a hearing on consent is the right of consent in an adoption proceeding. Here, the father was deprived of a fundamental, constitutionally protected right[43] when the parental tie was severed without notice of the adoption proceeding. Madden was entitled to notice and an opportunity to appear at the termination hearing. The cause is affirmed in part and reversed in part and remanded for proceedings consistent with this decision.

*Cate v. Archon Oil Co.,* 695 P.2d 1352, 1356 (Okla.1985); *Bomford v. Socony Mobil Oil Co.,* 440 P.2d 713, 718 (Okla.1968). Lack of notice constitutes a jurisdictional infirmity. *Bailey v. Campbell,* see this note, supra; *Cate v. Archon Oil,* see this note, supra; *Pointer v. Hill,* 536 P.2d 358, 361 (Okla.1975).

**40.** *Matter of Adoption of J.L.H.,* see note 2, supra; *Matter of Adoption of Darren Todd H.,* see note 2,

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; TRIAL COURT AFFIRMED IN PART AND REVERSED IN PART; CAUSE REMANDED.**

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES, LAVENDER and HARGRAVE, JJ., concur.

SIMMS and WATT, JJ., concur in parts I and II, dissent from part III.

SUMMERS, J., concurs in part and dissents in part.

supra. See also, *Santosky v. Kramer,* note 2, supra.

**41.** Title 10 O.S.1991 § 60.6, see note 4, supra.

**42.** *Michigan v. Long,* see note 32, supra.

**43.** *Matter of Guardianship of S.A.W.,* see note 37, supra; *Matter of Chad S.,* see note 37, supra.