1999 OK CIV APP 119

**In the Matter of the ADOPTION OF R.A.D., a minor child,**

**William Earl Collins, Jr. and Mary Catharine Collins, Petitioners/Appellees,**

v.

**Uriel Richard Dewey, II, Respondent/Appellant.**

No. 92,884.

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 24, 1999.

Michael J. Tullius, Oklahoma City, Oklahoma, for Appellant.

Jacquita R. Gorelick, Oklahoma City, Oklahoma, for Appellees.

Noel K. Tucker, Phillip J. Tucker, Edmond, Oklahoma, For Minor Child.

## OPINION

Opinion by CAROL M. HANSEN, Presiding Judge.

¶1 On June 4, 1998, Appellees, Mary Catharine Collins, and William Earl Collins, Jr., filed their Petition for Adoption and Application to Determine Child Eligible for Adoption Without Consent of the Natural Father. The minor child sought to be adopted is the biological child of Appellee, Mary Catharine Collins and Appellant, Uriel Richard Dewey, II. The minor child was born in March 1990. Appellee and Appellant were divorced in 1994. The petition for adoption, filed pursuant to 10 O.S.1998 Supp. § 7505–4.2, alleged the consent of Appellant was not necessary because he willfully failed, refused, or neglected to contribute to the support of the minor child for a period of 12 consecutive months out of the last 14 months preceding the filing of the petition for adoption.

¶2 A hearing on the Application for Order Determining Child Eligible for Adoption Without Consent of the Natural Father was conducted wherein evidence revealed Appellant, incarcerated since December 1996, had not provided any support for the minor child for the fourteen months prior to the June 1998 filing of the petition for adoption. Appellant testified he receives $7.20 per month as gain pay for participation and enrollment in the Taft Vocational and Technical Training School. Moreover, from April 1997 (fourteen months prior to the filing of the petition for adoption) to June 1998, Appellants' parents sent Appellant $60.00 per month.

¶3 The trial court found that during the fourteen months preceding the filing of the

petition, Appellant had income of $67.20 per month. It also found that for this same time period, Appellant "willfully failed and refused to support his child in accordance within his financial ability to contribute and that his consent to the adoption is not required or necessary to the continuation of the adoption." Appellant appeals the March 10, 1999 order memorializing this finding.

¶4 Appellant contends the trial court erred in finding there was clear and convincing evidence he willfully failed, refused and neglected to support the minor child in accordance with his financial ability. In *Matter of V.A.J.*, 1983 OK 23, 660 P.2d 139, the biological father was incarcerated. His wife divorced him and she and her new husband sought to adopt the minor child without the father's consent. The father had an income of $25.00 per month derived completely from funds provided by his parents. In overturning the trial court's finding the father willfully failed, refused and neglected to provide according to his financial ability, the Supreme Court held:

> We cannot agree that here the father's failure to contribute any portion of his limited funds to support his son constituted "wilful, refusal and neglect to provide according to his financial ability." The father was a beneficiary of his parents' largesse. The meager monthly stipend—which could be granted or withdrawn at will—should not be considered as a resource in gauging the father's ability to contribute. The record reveals the father clearly has no other source of income. In the eyes of the law he should stand before the court as a resourceless prisoner. His ability to contribute should be judged without regard to his parents' largesse.

And further:

> The natural father is not to be deemed wilful when, as here, incarceration prevents his making any contribution to the child's support. The proper inquiry to address in this case is whether the natural parent intentionally incapacitated himself for the purpose of avoiding the duty imposed by law; if so, then imprisonment may constitute justification for dispensing with his consent in the adoption proceed-

ing. The evidence here does not support an inference that the father's commission of a felony, and subsequent incarceration therefor, was for the purpose of avoiding his support obligation. Thus his incapacity to earn income and pay support may not be deemed "wilful."

¶5 *V.A.J.*, *supra*, is controlling regarding the $60.00 per month Appellant received from his parents. The trial court erred in finding the $60.00 was a resource to be considered in calculating Appellant's ability to contribute to the minor child's support.

¶6 · The matter is REVERSED AND REMANDED for a determination, considering Appellant's $7.20 per month gain pay, of whether Appellant has willfully failed, refused, or neglected to contribute to the minor child's support.

CARL B. JONES, C.J., dissents with separate opinion; and ADAMS, J., concurs.

CARL B. JONES, Chief Judge, Dissenting.

¶1 Appellees, William Earl Collins, Jr. and Mary Catharine Collins, initiated the underlying action to adopt Mary's minor child without the consent of his natural father, Uriel Richard Dewey, II, Appellant. The petition, filed pursuant to 10 O.S.Supp. 1998 § 7505–4.2, alleged that the father had willfully failed, refused or neglected to contribute to the support of the child for the preceding twelve months, therefore his consent was unnecessary and his parental rights should cease. The trial court appointed independent counsel to represent the interests of the child in the proceedings.

¶2 Following a hearing, the trial court ruled the child was eligible for adoption without the father's consent. The father appealed. He asserts two propositions of error on appeal: 1) the trial court erred in finding a duty to support existed through the divorce decree although the determination of support was never ordered by any court; and 2) the trial court erred in finding that the father willfully failed, refused or neglected to support the minor child in accordance with the father's financial ability. .

¶ 3 Prior to the divorce of the natural parents, the grandparents were made guardians of the minor child. In the guardianship order, the issue of child support was reserved for a future hearing. Approximately three months later, the natural parents were divorced and the decree provided that the amount of child support was established in the guardianship matter. The divorce decree did provide that the father would be responsible for 50% of any medical and dental expenses not covered by insurance. No order was ever entered determining the amount of child support. Relying on *In the Matter of the Adoption of R.W.S.,* 1997 OK 148, 951 P.2d 83, the father contends that because no determination of child support was established by a court in either the guardianship proceeding or the divorce proceeding, a determination of willful failure, refusal or neglect to contribute to the support of the minor child could not be shown.

¶ 4 This argument should fail because the divorce decree *did require* medical support by the father. The father concedes he has never provided any medical support for his child. In addition, 10 O.S.Supp. 1998 § 7505-4.2(B)(2) provides that consent to adopt a minor child is not required from a parent, who for the last twelve months has willfully failed, refused, or neglected to contribute to the support of the minor child in accordance with the parent's financial ability *if no provision for support is provided in an order.* Section 7505-4.2(B) further provides that the incarceration of a parent alone shall not prevent the adoption of a minor without consent.

¶ 5 The father's reliance on *In the Matter of the Adoption of R.W.S., supra,* also is misplaced. In *R.W.S.,* the trial court deferred payment of child support by the father until he was released from prison. There is an obvious distinction between this case and *R.W.S.* In *R.W.S.,* the court's order affirmatively suspended support during the incarceration. That action had the effect of suspending the common law obligation of support, as well as the statutory obligation arising from § 7505-4.2(B)(2), supra. There is no provision in any order here refuting the existence of such an obligation. Evidence was introduced that the father had not sent money, food, medicine, or clothes to the child within the statutory period prior to the filing of the petition for adoption. The Oklahoma Supreme Court consistently holds that to avoid adoption, the parent is required to show support contributions commensurate with ability, in any form, toward the child's living expenses. Here, the father testified that· he knew his duty to support his child was not released by either the guardianship proceeding or the divorce proceeding. He further testified that he only received $7.20 a month from his work while incarcerated and that his parents send him $60.00 a month. His argument on appeal is that he does not have enough money to send anything to his child. How much money a parent has is not the standard which is considered in determining whether a parent's consent is necessary before adoption proceedings. The courts look at what the parent has demonstrated, through whatever means available to him, showing the parent has not forgotten his statutory obligation to his child. *In the Matter of the Adoption of R.W.S., supra.* Here, the father failed to provide any evidence that he had even attempted to contribute any item, in any form, as support for his child. The father relies upon *Matter of Adoption of V.A.J.,* 1983 OK 23, 660 P.2d 139, asserting gifts from his parents cannot be considered as a personal resource in figuring support. Even if this language from *V.A.J.* is taken literally, then there is no reason the court could not find that his total failure to provide *anything* whatsoever from the meager amount that remains is sufficient to uphold the judgment of the court. However, any money available to an incarcerated individual should be considered discretionary income available for fulfilling the parental obligation of support. Gifts should be correctly considered in establishing the existence of "contributions, commensurate with ability in any form," sufficient to discharge that duty. Furthermore, if the language relied upon by the majority is taken literally to mean largesse from third parties is not to be considered when measuring *past failure to support,* then that rule would equally apply when the court was considering a more fortunate recipient of past gifts, which is irrational. For

instance, had this incarcerated person been given gifts of $50,000.00 in the past years by each of his parents, we would be constrained to hold that despite the fact he had $100,-000.00 per year in disposable income, that sum could not be considered in deciding his obligation to support his child had been willfully neglected. Past gratuitous contributions, such as gifts, cannot be properly considered in setting future support obligations and this much should be obvious. Past gifts should be material, however, in determining ability in any form to contribute to the support of the child in the past fourteen months. For this reason, V.A.J. should not be construed so broadly, or it should be reconsidered. Now.would be the appropriate time to do so.

¶ 6 The standard of proof in determining a child's eligibility for adoption without parental consent is clear and convincing evidence. The issue of wilful non-support is a question for the trier of fact. *In the Matter of Adoption of J.R.M.*, 1995 OK 79, ¶ 1, ¶ 9, 899 P.2d 1155, 1156, 1158. We should have reviewed this record and found the trial court's order allowing the adoption of R.A.D. without the consent of his natural father was supported by clear and convincing evidence, even if the only support for such is the total failure to contribute anything from his meager Seven Dollars and Twenty Cents per month of discretionary income.

¶ 7 I respectfully DISSENT.